**The Honorable _____**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION**, | ) )  ) |
| **Plaintiff,** | ) ) **Civil Action No.: 3:24-cv-5815** |
| **v.** | ) ) |
| **AIPU LIMITED,** **FIDEFX INVESTMENTS LIMITED,** **CHAO LI,** **QIAN BAI, and** **LAN BAI** | ) **COMPLAINT FOR INJUNCTIVE AND** ) **OTHER EQUITABLE RELIEF AND** ) **CIVIL MONETARY PENALTIES** ) **UNDER THE COMMODITY** ) **EXCHANGE ACT** |
| **Defendants.** | ) ) **JURY TRIAL DEMANDED** ) |

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by and through its undersigned attorneys, hereby alleges as follows:

## I.    SUMMARY

1.    From at least February 6, 2023 to the present (hereinafter, the "Relevant Period"), Qian Bai ("Bai") and Lan Bai, individually and as controlling persons of Aipu Limited ("Aipu"), together with Fidefx Investments Limited ("FIL") and Chao Li ("Li"), (collectively, the "Defendants"), acting as a common enterprise, have fraudulently solicited and misappropriated, and continue to fraudulently solicit and misappropriate, at least $3,630,848.90 from not less than

Complaint -1
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

thirty-two (32) customers as part of a fraudulent investment scheme that involves soliciting and accepting assets - both fiat currency and digital assets - from customers in connection with the sale of agreements, contracts or transactions in commodities on a leveraged or margined basis, or financed by the offeror, counterparty or a person acting in concert with the offeror or counterparty on a similar basis ("leveraged or margined retail commodity transactions"), off-exchange retail foreign currency ("retail forex") contracts, and commodity futures contracts, which together are included with the definition of "commodity interest" as defined by Commission regulations.  17 C.F.R. § 1.3 (2023).  The majority of the at least thirty-two (32) customers were located in the United States during the Relevant Period.  Most, if not all, of the customers, including one customer who resides in Pierce County, Washington, are not eligible contract participants ("ECPs") pursuant to Section 1a(18)(A)(xi) of the Commodity Exchange Act ("CEA"), 7 U.S.C. §1a(18)(A)(xi).

2.     The fraudulent common enterprise follows a similar pattern, with customers either directly funding a purported "trading account" with Aipu via the website *www.aipufx.com,* or with FIL via the website *www.fidefxltd.com* (collectively the "websites"), or agreeing to trade commodity interests via Aipu and/or FIL after being contacted by individuals acting on behalf of the Defendants ("Solicitors").  The content of the websites is essentially identical, with only the name of the purported trading company being the only difference.  Aipu and FIL operate in essentially an identical fashion, in furtherance of the Defendants' common enterprise.

3.     Solicitors contact the customers via computer and cell phone applications such as WeChat, WhatsApp, and Line, and other social media platforms.  The Solicitors claim to have knowledge or inside information that allows them to earn 10% to 30% profits per trade trading in

Complaint -2
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

commodity interests such as leveraged or margined retail commodity transactions, retail forex, and/or commodity futures contracts.  The Solicitors offer to share their knowledge or inside information with customers and to help them trade by providing particularized trading advice. Once an account is funded, customers are provided access to online account statements that show purported deposits into their trading accounts and profitable trading at Aipu or FIL.  These account statements are false.  Neither Aipu nor FIL have any trading accounts in the United States to which customer funds are sent.  Upon information and belief, there are no trading accounts at Aipu or FIL to which customer assets are sent, and no trading takes place on behalf of customers at either Aipu or FIL.

4.      Defendants do not have any commodity interest trading accounts, fail to use customer assets to margin, guarantee, or secure trades on behalf of defrauded customers, and misappropriate all assets they accepted, and continue to accept, from customers by immediately transferring said assets to the People's Republic of China ("PRC") and elsewhere to entities with no connection to commodity trading.

5.      Throughout the Relevant Period, for the purpose of funding customers' purported commodity trading accounts, Defendants, working in concert with Solicitors as a common enterprise, direct customers to transfer their fiat and digital assets through a series of bank accounts and private digital wallets affiliated with Defendants.  None of these accounts are held at, or controlled by, a CFTC-registered futures commission merchant ("FCM") or retail foreign currency dealer ("RFED").  Rather than using these assets to trade commodity interests on behalf of customers, Defendants immediately misappropriate customers' assets by transferring them

Complaint -3
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

offshore to non-trading accounts controlled by persons in the PRC, Malaysia, and elsewhere ("Scheme Entities").

6.      Bai and Lan Bai, individually and as controlling persons of Aipu, knowingly or recklessly omit material facts from customers after accepting their assets for the purpose of trading commodity interests, including but not limited to: Defendants misappropriate all customer assets; Defendants do not trade commodity interests on behalf of customers after accepting customers' assets; Defendants do not forward customers' assets to any entity that trade assets on behalf of customers; customers have no trading accounts; and, the online account statements Defendants provide customers are false.

7.      Li, individually and as the controlling person of FIL, knowingly or recklessly omits material facts from customers after accepting their assets for the purpose of trading commodity interests, including but not limited to: Defendants misappropriate all customer assets; Defendants do not trade commodity interests on behalf of customers after accepting customers' assets; Defendants do not forward customers' assets to any entity that trades assets on behalf of customers; customers have no trading accounts; and, the online account statements Defendants provide customers are false.

8.      Throughout the Relevant Period, Lan Bai knows or recklessly disregards that the customer assets she accepts into bank accounts and/or digital asset accounts she controls are intended for trading commodity interests via purported Aipu trading accounts, and that she forwards customer assets to persons that are not associated with commodity interests trading ("Scheme Entities") as intended by customers.

Complaint -4
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

9.      Throughout the Relevant Period, Bai knows or recklessly disregards that the customer assets he accepts via the Aipu website and otherwise are intended for trading commodity interests via purported Aipu trading accounts, that the statements he makes to customers in his role as Aipu's "Customer Service" representative are false and omit material facts, and that he causes customer assets to be forwarded to Scheme Entities that are not associated with commodity interests trading as intended by customers.

10.     Throughout the Relevant Period, Li knows or recklessly disregards that the customer assets she accepts via the FIL website and otherwise are intended for trading commodity interests via FIL trading accounts, that the account statements issued to customers are false and omit material facts, and that she causes customer assets to be forwarded to Scheme Entities that are not associated with commodity interest trading as intended by customers or promised by Defendants.

11.     Defendants are joined in a common purpose of defrauding and profiting from customers, have relationships with and among each other, depend upon the participation of each other to accomplish their common purpose, utilize websites that are mirror images of one another, and are each employed by and/or associate with the Scheme Entities during the Relevant Period.

12.     By this conduct, and the conduct further described herein, Defendants have engaged, are engaging, and/or are about to engage in acts and practices in violation of Sections 4b(a)(2)(A)-(C) and 6(c)(1) of the CEA, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 9(1), and Commission Regulations ("Regulations") 5.2(b)(1) and (3) and 180.1(a)(1)-(3), 17 C.F.R. §§ 5.2(b)(1), (3), 180.1(a)(1)-(3) (2023).

Complaint -5
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

13.    Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint, and similar acts and practices, as more fully described below.

14.    Accordingly, pursuant to Section 6c of the CEA, 7 U.S.C. § 13a-1, the Commission brings this action to permanently enjoin Defendants' unlawful acts and practices, to compel their compliance with the CEA and the Regulations, and to further enjoin them from engaging in any commodity-interest related activity, as set forth below.  In addition, the Commission seeks civil monetary penalties for each violation of the CEA and Regulations, and remedial ancillary relief, including, but not limited to, trading bans, restitution, disgorgement, an accounting, pre- and post-judgment interest, and such other relief as the Court deems necessary and appropriate.

## II.    JURISDICTION AND VENUE

15.    This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c of the CEA, 7 U.S.C. § 13a-1(a), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the CEA or any rule, regulation, or order thereunder.

Complaint -6
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

16.     Venue properly lies with this Court pursuant to Section 6c(e) of the CEA, 7 U.S.C. § 13a-1(e), and 28 U.S.C. § 1391(b) because Defendants reside, transact or transacted business in this District, at least one customer of the Defendants resides in this District, and certain of the transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur within this District.   Venue also properly lies as to aliens Bai, Li, FIL, and Aipu pursuant to 28 U.S.C. § 1391(c)(3).

### III.     THE PARTIES

#### A.     PLAINTIFF

17.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the CEA and Regulations.  The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

#### B.     DEFENDANTS

18.     Defendant **Qian Bai** resides in the PRC.  Pursuant to the records of the United Kingdom's Companies House registration, Bai incorporated Aipu on March 23, 2023, and is listed as the sole Director of Aipu.  Bai is listed as residing in the PRC, with a correspondence address in West Midlands, England, United Kingdom.  Bai is also the person who registered the Aipu website on or about March 17, 2023, through *Go Daddy.com*, a U.S.-based company, using a purported address in Kowloon, Hong Kong, a special administrative region of the PRC.  Bai communicates directly with customers using the email address "Qian Bai service@aipufx.com," WeChat, as well as Aipu's own application "AIPUFX.cc" ("AIPUFX.cc" or the "application").  Bai is not registered in any capacity with the Financial Conduct Authority, which is the United

Complaint -7
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

Kingdom's regulator of financial firms and their employees who market and provide services to customers related to financial products.  Bai has never been registered with the Commission in any capacity.

19.     Defendant **Chao Li** resides in the PRC.  Pursuant to the records of the United Kingdom's Companies House registration, Li incorporated FIL on November 3, 2023, and is listed as the sole Director of FIL.  Li is listed as residing in the PRC, with a correspondence address in West Midlands, England, United Kingdom that is the same address used by Bai.  Li is not registered in any capacity with the Financial Conduct Authority, the United Kingdom's prudential regulator.  Li has never been registered with the Commission in any capacity.

20.     Defendant **Aipu Limited** is a "private limited company" organized pursuant to the laws of the United Kingdom.  Pursuant to the records of the United Kingdom's Companies House registration, Aipu was created on or about March 23, 2023 and has a registered office address located in Manchester, England.  Aipu has never been registered with the United Kingdom's Financial Conduct Authority in any capacity.  Aipu has never been registered with the Commission in any capacity.

21.     Defendant **Fidefx Investments Limited** is a "private limited company" organized pursuant to the laws of the United Kingdom.  Pursuant to the records of the United Kingdom's Companies House registration, FIL was created on or about November 3, 2023 and has a registered office address located in Coventry, West Midlands, England.  FIL has never been registered with the United Kingdom's Financial Conduct Authority in any capacity.  FIL has never been registered with the Commission in any capacity.

Complaint -8
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

22.    Defendant **Lan Bai** resides in Tulsa, Oklahoma.  Lan Bai has never been

registered with the Commission in any capacity.

## IV.    STATUTORY BACKGROUND AND LEGAL FRAMEWORK

23.    The purpose of the CEA is to "serve the public interests . . . through a system of

effective self-regulation of trading facilities, clearing systems, market participants and market

professionals under the oversight of the Commission," as well as "to deter and prevent price

manipulation or any other disruptions to market integrity; to ensure the financial integrity of all

transactions subject to [the CEA] and the avoidance of systemic risk; to protect all market

participants from fraudulent or other abusive sales practices and misuses of customer assets; and

to promote responsible innovation and fair competition among boards of trade, other markets and

market participants."  Section 3 of the CEA, 7 U.S.C. § 5.

24.    Section 2(c)(2)(C)(i)(I) of the CEA, 7 U.S.C. § 2(c)(2)(C)(i)(I), in relevant part,

applies to any agreement, contract, or transaction in, or in connection with, forex that is offered

to, or entered into with, a person that is not an ECP "on a leveraged or margined basis, or

financed by the offeror, the counterparty, or a person acting in concert with the offeror or

counterparty on a similar basis," subject to certain exceptions not applicable here.

25.    Section 2(c)(2)(D)(i)(I) of the CEA, 7 U.S.C. § 2(c)(2)(D)(i)(I), in relevant part,

applies to any agreement, contract, or transaction in, or in connection with, any commodity that

is offered to, or entered into with, a person that is not an ECP "on a leveraged or margined basis,

or financed by the offeror, the counterparty, or a person acting in concert with the offeror or

counterparty on a similar basis," subject to certain exceptions not applicable here.

Complaint -9
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

26.     7 U.S.C. § 1a(18)(A)(xi) defines an ECP, in relevant part, as an individual:

(a) who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or (b) $5 million if the individual enters into the transaction to "manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."  Individuals who do not meet these criteria are non-ECPs.

## V.     FACTS

### A.     Defendants' Fraudulent Scheme

27.     During the Relevant Period, Defendants engaged, and continue to engage, in a fraudulent common enterprise scheme whereby Defendants and their Solicitors solicit prospective and actual customers, the majority of whom are located in the U.S., through the websites, cell phone applications such as WeChat, WhatsApp, Line, and Defendant Aipu's own application "AIPUFX.cc", other social media platforms and/or messaging applications, and unregistered associated persons.  Upon information and belief, the Aipu website was no longer operating as of late April to early May of 2024.  The FIL website, essentially a mirror image of the Aipu website, began operating on or about October 23, 2023, and is currently soliciting actual and prospective customers.

### 1.     Websites' Solicitations

28.     Defendants, through the websites, offer actual and potential customers highly leveraged trading in both retail forex pairs, with "variable spreads" and leverage of 1:1000, and in commodity futures contracts in precious metals, energy and agriculture futures contracts at 1:500 leverage.  The websites, controlled by Bai and Li respectively as the sole Directors of Aipu and FIL respectively, made identical representations to actual and prospective customers.  Aipu's

Complaint -10
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

website stated: "At the heart of AIPU Limited's business is our commitment to offer clients competitive spreads and execution on major currency pairs." FIL's website used the same representation: "At the heart of FIL's business is our commitment to offer clients competitive spreads and execution on major currency pairs." Aipu and FIL further affirmatively misrepresent, through the websites, that:

> "[Aipu Limited/FIL] is a fully regulated global forex and CFD broker. Founded by a dedicated, veteran team of online finance professionals, the company has extensive experience offering innovative trading products and exceptional service and support. Combining technological ingenuity and attentive, personal service, [Aipu Limited/FIL] offers traders a superior trading experience, on one platform called FX6. Our cross-device capability means you can trade at your Office, home or on the go via desktop, laptop, mobile or tablet. Moreover, our highly trained, dedicated account managers are available 24 hours a day to provide you expert, Professional guidance in your language, whenever you need…
>
> A regulated broker, holding licences [*sic*] from the Vanuatu Financial Control (VFC), [Aipu Limited/FIL] is authorised to offer financial services across Europe, Far East, Asia and America. Committed to upholding strictest regulatory standards, we ensure total transparency and guarantee the privacy and security of your account with the most sophisticated safety protocols."

(FIL's website makes the same claim, simply substituting "FIL" for Aipu Limited.)

29.    These representations are false. Neither Aipu nor FIL offer actual leveraged trading in commodity interests. Neither Aipu nor FIL is "fully regulated" or licensed. There is no such entity named the "Vanuatu Financial Control." The Vanuatu Financial Services

Complaint -11
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

Commission ("VFSC") is the financial regulatory authority of Vanuatu, an island country in the southwestern Pacific Ocean. The VFSC has never registered or licensed Aipu, FIL, or any other Defendant in any capacity.

30.    The Defendants cannot lawfully solicit assets, or accept assets, from customers in the United States to engage in trading commodity interests on their behalf, as none of the Defendants have ever been registered with the Commission in any capacity.

31.    Regarding the "FX6" trading platform, Aipu and FIL each represent it can be used on "PC, Web, IOS and Android" and can be utilized to trade customers' fiat and digital assets. Defendants, through the websites, represent to actual and prospective customers: "The FX6 trading platform is designed for Forex, futures and CFD trading. With FX6, traders can analyze financial markets, perform advanced trading operations, run trading robots (Expert Advisors) and copy deals of other traders."

32.    These representations are also false. Defendants fail to advise actual and prospective customers that there are no customer accounts at either Aipu or FIL, that no trading takes place, and that no trading takes place by use of the "FX6 trading platform" or otherwise. These misrepresentations and omissions of facts are material, as a reasonable customer would want to know that there are no trading accounts, that the account statements provided to them by Defendants are false, that no trading takes place at either Aipu or FIL, and that their assets are misappropriated by the Defendants acting as a common enterprise.

33.    The Defendants, acting as a common enterprise, use the websites to target unsophisticated customers who are more susceptible to believe Aipu's and FIL's fraudulent representations. The Defendants, via the websites, make no inquiry as to whether a potential

Complaint -12
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

customer qualifies as an ECP.  Instead, the websites each falsely represent that a prospective customer can "open an account in five minutes" and that "true ECN pricing with added liquidity from over 50 different banks and dark pool liquidity sources mean[t] tighter spreads across 60 forex pairs 24/5."

34.    The Defendants, via the Aipu and FIL websites, falsely represent that Aipu and/or FIL offer customers a legitimate live trading platform. No actual trading takes place on customers' behalf.  Instead, once Defendants receive a customer's assets, such assets are misappropriated by the Defendants by sending customer assets to offshore bank accounts with no association with commodity trading.  Customers are provided a username and password for online access via each of the websites to view what is represented to them as their account statement, which shows their purported trading account carried account balances consistent with the amount of assets transferred by customers to the Defendants.  Further, the customers' online account statements show profitable trading in their purported trading account at AIPU or FIL. These online account statements are false, as no trading takes place on behalf of customers.

### 2.    Direct Solicitations via Messaging Apps and Similar Tools

35.    The direct solicitation of customers follows a similar pattern.  One customer (Customer "A"), who is a resident of Hawaii, described his experience as follows:

"In July 2023 I was contacted through an online messaging App the Line (call and message app) by someone that goes by Lillian. We started messaging each other in the beginning about different things and then it turned to investing and spot gold. Lillian shared that she studied spot gold and was pretty good at making small profits between

Complaint -13
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

10% to 30% per trade involving trades of leveraged or margined gold-U.S. dollar pair ("XAUUSD") transactions

She chatted with me for a while till she persuaded me to sign up for an account with Aipu Limited. Once I signed up for the account, she said that I should sign up for an account with Crypto.com so I could deposit money (crypto) into my Aipu account. Lilian told me she will co-invest with me and I saw deposits she claims to have made credited to my aipufx account. I would receive text from Lilian proving me with signal to enter and exit my trades.

From August 2023 through to October 2023 I transferred 117.26 ETH - equivalent to over $400k - and I traded my account up to $915k including over $273k in rewards."

36.    When Customer A attempted to withdraw assets, Aipu and Bai fraudulently gave him various excuses as to why a withdrawal of assets from his purported trading account could not take place.  Ultimately, Customer A lost all assets he transferred to Aipu to secure commodity interest trading on his behalf.

37.    A second customer (Customer "Z"), who is a resident of Indiana, had a similar experience.  Customer Z was contacted on the social media application WeChat by a Solicitor purportedly identified as "Arlene" to set up a trading account on Aipu's website.  As described by Customer Z, he sent money directly to Lan Bai, pursuant to the directions of Aipu's Solicitor "Arlene."  Customer Z described his experience as follows:

She [Arlene] showed me step-by-step how to set up different accounts, including several crypto accounts and AIPU trading account, and how to trade in AIPU.  We only traded gold price (sic) through XAUUSD on AIPU.

Now I suspected that she may be an insider of AIPU.

Complaint -14
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

First, she knows the timing when price will jump (sic) . In several trades I did with her, she told me ahead of the trade at exact what time to buy (sic), and after I placed orders, there tended to be a spike in price. After a few minutes, the price will come down. But before the price came down, she already instructed me to sell (cover). She credited her knowledge, including the timing of the trade, to a team of friends doing some research. Below is a screen capture of a trade taking place on June 23, 2023. I placed an order at the price of 1920.9 before the blue spike and sold (cover) at the price of 1923 within 2 minutes window (sic).



Second, she introduced me to an VIP program at AIPU to encourage clients to deposit more money. To help me meet my VIP requirement, she also deposit (sic) a total of $580,000 in four transactions to my accounts. She must be insider of AIPU to explain this behavior.

She lives a rich lifestyle in San Francisco and takes private jet back to China through Hong Kong. I think she is a beneficiary of the AIPU online frauds.

After Chase bank and three crypto sites blocked my money transfer to Hong Kong, I wired money twice to Liang's friends and associates, and hoping through them to transfer money to AIPU to fulfill my VIP requirement and to unfreeze my account there. The

Complaint -15
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

first time, on September 15, 2023, $125K was wired to her assistant ["LT"] with her instruction, and the money eventually was deposited to my AIPU account.   The 2nd time, on September 20, 2023, $18.5K was wired to her friend Lan Bai.  After a delay, the money was eventually forwarded to Liang.  But she did not transfer it to AIPU since the deadline to fulfill my VIP requirement has passed.  I asked her to return the funds to me later, and she agreed first and then cut me off completely.

38.    The above screenshot displaying "XAU/USD" is from Aipu's own application AIPUFX.cc, and purports to show a trading record in which Aipu entered into a currency pair transaction for the benefit of Customer "Z's" trading account.  XAU/USD is the label for gold to US Dollar traded on the foreign exchange markets: Gold (XAU) is traded against the US dollar (USD), and its price represents the cost of one ounce of gold in USD.  Although it involves gold, XAU/USD is traded on the forex marketplace like a currency pair.  The transaction statement displayed is false, as no trading takes place by Aipu on behalf of Customer "Z."

39.    Defendants, acting as a common enterprise through the acts of Li, Bai and/or Lan Bai,  move customers' assets among themselves, using common digital asset wallets to misappropriate customer assets.  In one such transaction, Customer "L," who is a resident of Pierce County, Washington, was directed by Solicitors to forward digital assets to Aipu's digital wallet address to secure purported commodity trading in Customer "L's" trading account.  However, an analysis of the transaction purportedly between Customer "L" and Aipu reveals that the sending digital wallet address is actually associated with FIL.

40.    Once customers who do not already have an account with Aipu or FIL decide to participate, the Solicitors introduce them to Aipu and/or FIL, where customers set up their "trading accounts" via Aipu's website and FIL's website, respectively.  Solicitors fraudulently

Complaint -16
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

claim to have trading accounts at Aipu and/or FIL, and further claim to trade commodity interest contracts successfully.  For example, Aipu's customer service representatives ("Customer Service") provide customers with wire transfer instructions regarding the bank accounts to which they should wire their assets, such as Aipu's bank accounts or, digital wallet addresses if the customers are transferring digital assets.  A number of customers of both Aipu and FIL are directed to wire funds to bank accounts located in the U.S. which are solely controlled by Lan Bai.  Once customer funds are accepted into her bank accounts, Lan Bai controls the movement of customer funds, and controls whether customer funds are misappropriated.

41.     Bai directly communicates with customers, including via a Customer Service email address, and knowingly or recklessly omits material information in communications with customers, as well as providing materially false information, in said communications with customers.

42.     Lan Bai communicates with both Aipu and FIL customers via the Zelle payment application, and then accepts wire transfers of customer funds into her personal bank accounts. For example, on September 20, 2023, Customer "Z" sent his last wire transfer to Aipu by sending $18,500 to Lan Bai's personal bank account.  Between October 2, 2023, to November 7, 2023, Customer "Z" sent messages to a Solicitor identified as "Liang" via WeChat about Lan Bai returning his $18,500, and he also spoke with Lan Bai directly on the telephone and via text message about returning his $18,500.  In another transaction, on February 4, 2024, FIL Customer "C" sent a Zelle transfer of $100 to Lan Bai's JPMC account ****3602 with a notation stating: "Fidefx."

Complaint -17
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

43.    As part of the fraudulent scheme, Aipu's Customer Service assists customers in setting up their trading accounts by instructing them to download Aipu's own application "AIPUFX.cc" onto their cellular telephone or mobile device.  This application allegedly allows customers to trade commodity interests via the "FX6" trading platform.

44.    In fact, the application does not interface with a legitimate trading platform and the customers are actually interfacing with individuals who are also part of the fraudulent scheme.  The application only mimicked the features of a live trading platform by, among other things, purportedly allowing customers to enter and track their trades, interface with customer service representatives, and check their purported account balances.  The information contained in the application, such as trade data and account history, is controlled by Bai and Aipu and is false.

45.    Throughout the Relevant Period, Defendants omit material facts in communications with actual and prospective customer, including, but not limited to: there are no trading accounts; customers' assets are not used to trade commodity interests; Defendants are operating a "Ponzi" scheme; and, customers' assets are misappropriated by the Defendants as part of a common enterprise fraud.

46.    After customers wire funds to the personal bank accounts of Lan Bai and/or others, these customers' online account statements show the assets they transferred through Lan Bai and/or others are credited to the customers' trading account.  These transactions, together with the Zelle transactions, demonstrate that Lan Bai is personally involved in the operation of the common enterprise fraudulent scheme on behalf of both Aipu and FIL, and that she controls part of the movement of customer funds during the Relevant Period.  Each time Lan Bai accepts

Complaint -18
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

into her personal bank accounts the transfer of assets from customers, these assets are not transferred to a trading entity.  Instead, Lan Bai misappropriates customers' assets by transferring them to Scheme Entities in the PRC and Malaysia.  At no time does Lan Bai reject any deposit of customer funds wired into her personal bank accounts, nor does she ever make inquires to defrauded customers as to why customers are wiring funds.  Lan Bai opens and uses at least five (5) bank accounts carried in her name to accept customer funds during the Relevant Period.  Lan Bai retains a portion of the customer funds wired into her personal bank accounts during the Relevant Period, and uses said funds for her personal benefit.

47.    Defendants use the false trading statements showing alleged profits to encourage customers to transfer additional assets for trading.  Initially after opening a trading account, customers are able to withdraw small amounts of their assets.  In fact, some Solicitors encourage customers to withdraw some of their assets from their account as proof that the trading is legitimate.  These withdrawals are not profits from trading, but are the assets of later-in-time customers in the nature of a "Ponzi" scheme.

48.    If customers subsequently attempt to close their account or withdraw large amounts from their trading accounts, they are falsely advised that they cannot withdraw their assets unless they first pay an additional "tax" or a "fee," which is as large as thirty percent (30%) of their purported account balance.

49.    The purported trading accounts are also funded through digital asset transfers; to Aipu's and FIL's digital wallet addresses via digital accounts customers hold at digital brokers.  As noted previously, some digital asset transfers by customers holding purported trading accounts at Aipu are in fact transferred to digital wallet addresses associated with FIL.  Some

Complaint -19
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

customers wire fiat currency to the personal accounts of Lan Bai and others, who then forward the fiat currency to bank accounts carried in the name of non-trading Scheme Entities in the PRC and Malaysia.

50.    Bai individually, and as the sole Director and a controlling person of Aipu, knows or recklessly disregards that the misappropriated assets are customer assets intended to be used solely for the purpose of trading commodity interests.

51.    Lan Bai knowingly or recklessly disregards that she was and is accepting customer assets into her personal bank accounts, which are intended to be used for trading commodity interests.  Instead of using customer assets to trade commodity interests, Lan Bai misappropriates customer assets by wiring funds to Scheme Entities' bank accounts in the PRC and Malaysia that are not associated with trading commodity interests.  At no time during the Relevant Period does Lan Bai reject a customer deposit or Zelle transaction, advise her bank representative that funds are being deposited into her account(s) from unknown sources, or take any step to question customers regarding why they are wiring funds.  Each time Lan Bai accepts customer funds in the accounts she solely controls, she is solely in control of subsequently misappropriating said funds by wiring the customer funds she accepts to non-trading accounts in the PRC, Malaysia, and elsewhere.

52.    Li individually, and as the sole Director and a controlling person of FIL in charge of FIL's day-to-day activities, knows or recklessly disregards that the misappropriated assets are customer assets intended to be used solely for the purpose of trading commodity interests.

Complaint -20
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

**B.    Defendants and the Scheme Entities Operate as a Common Enterprise**

53.    Together with Scheme Entities, Defendants operate as a common enterprise with a shared purpose of defrauding customers.  Defendants Aipu and FIL are shell companies which serve no legitimate business purpose other than for Li, Bai and Lan Bai to accept and funnel assets to the Scheme Entities.

54.    Defendants and the Scheme Entities operate as an integrated whole in that they shared common control, assets, customers, fraudulent solicitations, and funneled customer assets though common financial account to common entities located in the PRC, Malaysia, and elsewhere.

55.    The nearly identical websites the Defendants use to tout Aipu's and FIL's purported "investments" in commodity interests demonstrate a commonality of control and design to defraud customers.  Defendants and the Scheme Enterprise shared common customers, assets, digital asset accounts, solicitations, and were controlled by the same individuals.

56.    The coordinated manner in which FIL and Aipu interact with customers and the Scheme Entities indicates there is a common control being exercised.  For example, customer fiat assets are deposited into Lan Bai's multiple personal bank accounts and are reflected very quickly in the customers' purported online trading account balances as shown on the AIPUFX.cc application.  On at least six (6) occasions, Lan Bai accepts customer fiat assets, from customers located in the U.S., via Zelle transfers that mention "Aipu" in the memo section, placing her on actual notice of the purpose of the transfers.  In a seventh Zelle transaction, Lan Bai accepts customer fiat assets, from a customer located in the U.S. that mentions "Fidefx" in the memo section, placing her on actual notice of the purpose of the transfer.  Lan Bai then fails to transfer

Complaint -21
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

the customers' fiat assets to Aipu and/or FIL or accounts carried in the name of Aipu and/or FIL, but instead misappropriates the customer's fiat assets by wiring them to third party Scheme Entities located offshore.

57.    As part of the common enterprise, Defendants move customers' digital assets among themselves, using common digital asset wallets to misappropriate customer assets. Customers are directed by Solicitors to forward digital assets to Aipu's digital wallet address to secure purported commodity trading in customers' trading accounts.  However, an analysis of transactions purportedly between customers and Aipu reveals that the sending digital wallet address is actually associated with FIL, not Aipu, demonstrating the Defendants commingle customer assets among themselves.

**C.    Defendants Bai and Lan Bai Are Controlling Persons of Aipu, and Know or Recklessly Disregard that Customer Assets Sent to Aipu Are Not Used for Trading**

58.    As the sole Director of Aipu, and therefore the person in day-to-day control of Aipu, Bai has personal knowledge of the operation of Aipu, the solicitations of customers via the website operated by Aipu, the origin of funds and digital assets being accepted into Aipu's bank accounts and digital wallets, and is responsible for the daily disposition of those assets.  As such, Bai is a controlling person of Aipu during the Relevant Period.  Bai knows that neither he nor Aipu hold any accounts for trading commodity interests.  Bai knows that neither he nor Aipu are commodity interests on behalf of Scheme Customers, either from the Unites States or elsewhere. Bai knows he is not registered with the Commission in any capacity, and cannot lawfully accept customer assets to trade commodity interests on their behalf.

Complaint -22
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

59.     Bai is also the person responsible for registering Aipu's website, and as the sole

Director of Aipu, Bai is solely responsible for the content of the website, including the fraudulent

solicitations to actual and prospective customers.

60.     Bai is engaged in directly making false solicitations to customers and is

responsible for omitting material facts in his direct communications with customers.  For

example, some customers are convinced to transfer additional assets to Aipu after being advised

that additional deposits will allow them to participate in a "Member Anniversary VIP Special."

In fact, the "VIP Special" is only another fraudulent tactic used by Defendants to misappropriate

additional assets from customers.  The experience of Customer "Z" in regard to the "VIP

Special" follows Bai's typical fraudulent solicitation pattern.  Customer "Z" was sent a "VIP

Special" promotional flyer whereby a Scheme Customer is encouraged to attain one of nine "VIP

membership levels" based on the amount of additional assets deposited into the customer's

purported trading account.

61.     In one email communication with Customer Z, Bai stated:

Hello, this is an anniversary activity picture (sic) launched by our company to give back
to new and old users.  The activity is valid for 80 days after you make a reservation.
Once you make a reservation, you need to complete the reservation level before you can
withdraw the reward funds.  If the reservation is not completed, there will be a penalty of
3% of the deposit amount.  If you complete the appointment, you can withdraw all your
funds immediately.  If you fail to complete the promotion within 80 days, you pay and
extension fee of US $20,000 for an extension of 10 working days…Please be aware of
the anniversary event rules, thank you.

62.     All of these statements are false.  Bai fraudulently omits material facts in this

email to the customer, including but not limited to failing to advise the customer that: the

customer's assets will be misappropriated and not used for trading even if the customer

Complaint -23
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

completes the supposed reservation levels and appointments.  Moreover, the communication is made to defraud the customer of additional assets without disclosing that the customer's previous assets had been misappropriated.  As the sole officer of Aipu, Bai has actual knowledge that this "promotion" is fraudulent.

63.  Lan Bai is also a controlling person of Aipu as the sole signatory in control of her personal bank accounts that accept customer assets.  Lan Bai accepted assets directly from customers, and communicates directly with customers via instant messaging applications and telephone calls.  Lan Bai knows or recklessly disregards that she is not trading commodity interests on behalf of customers, nor is she forwarding customer assets to any entity that trades commodity interests on behalf of Aipu or FIL's customers.  Lan Bai knows or recklessly disregards that she did not forward customer trading assets to any account carried in the name of Aipu.

64.  Further, Lan Bai knows she is not registered with the Commission in any capacity, and knows or recklessly disregards that Defendants cannot lawfully solicit or accept assets from customers to trade commodity interests.  Lan Bai knows that she does not hold any forex or commodity futures trading accounts in the United States, cannot enter into such trades on behalf of U.S. customers, and knows or recklessly disregards Defendants are not forwarding customer assets they receive to an FCM or RFED to trade on behalf of customers.

65.  For example, in the "Payment Memo" section of at least six (6) Zelle transactions between Lan Bai and a U.S. customer, it is noted that the assets are transferred to Lan Bai for "Aipu deposit," "Aipu Lan Bai," "Aipu Lan Bai #2," "Aipu Lan Bai #3," "Aipu Lan Bai #4," and "Aipu Lan Bai #5."  By these notations, and other interactions with customers, Lan Bai

Complaint -24
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

knows, or recklessly disregards, that the assets she accepts, and subsequently misappropriates, are customer assets intended to be sent to Aipu and used solely for the purpose of trading forex and/or commodity futures contracts via Aipu.  Accordingly, Lan Bai has actual knowledge that the assets she accepts into her personal bank account are for purposes of trading commodity interests at Aipu, and not for other services or goods.

> **D.    Defendant Li is the Controlling Person of FIL and Knows or Recklessly Disregards that Customer Assets Sent to FIL Are Not Used for Trading**

66.    As the sole Director of FIL, and therefore the person in day-to-day control of FIL, Li has personal knowledge of the operation of FIL, the solicitations of customers via the website operated by FIL, the origin of funds and digital assets being accepted into FIL's bank accounts and digital wallets, and is responsible for the daily disposition of those assets.  As such, Li is a controlling person of FIL during the Relevant Period.

67.    Li knows that neither she nor FIL hold any forex or commodity futures trading accounts.  Li knows that neither she nor FIL are trading forex or commodity futures on behalf of Scheme Customers, either from the Unites States or elsewhere.  Li knows she is not registered with the Commission in any capacity and cannot lawfully accept customer assets to trade commodity interests on their behalf.

## VI.    VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT I
**(All Defendants)**
**FRAUD IN CONNECTION WITH LEVERAGED AND MARGINED COMMODITIES TRANSACTIONS, FOREX, AND COMMODITY FUTURES**
**Violations of Section 4b(a)(2)(A)-(C) of the CEA, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2023)**

Complaint -25
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

68.     The allegations in paragraphs 1-67 are re-alleged and incorporated herein by reference.

69.     Section 4b(a)(2)(A)-(C) of the CEA, 7 U.S.C. § 6b(a)(2)(A)-(C), makes it unlawful:

> [F]or any person, in or in connection with any order to make, or the
> making of, any contract of sale of any commodity for future delivery, [ . . .
> ] that is made, or to be made, for or on behalf of, or with, any other person
> other than on or subject to the rules of a designated contract market—(A)
> to cheat or defraud or attempt to cheat or defraud the other person; (B)
> willfully to make or cause to be made to the other person any false report
> of statement . . . [or] (C) willfully to deceive or attempt to deceive the
> other person by any means whatsoever in regard to any order or contract
> or the disposition or execution of any order or contract, or in regard to any
> act of agency performed, with respect to any order or contract for or, in the
> case of paragraph (2), with the other person.

70.     Pursuant to Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv), Section 4b of the CEA, 7 U.S.C. § 6b, applies to the forex transactions, agreements, or contracts described in Section 2(c)(2)(C)(i) of the CEA, 7 U.S.C. §2(c)(2)(C)(i), "as if" they were contracts of sale of a commodity for future delivery.  Further, Section 2(c)(2)(C)(ii)(I) of the CEA, 7 U.S.C. § 2(c)(2)(C)(ii)(I), also makes those forex agreements, contracts, or transactions "subject to" Section 4b of the CEA, 7 U.S.C. § 6b.  Finally, Section 2(c)(2)(C)(vii) of the CEA, 7 U.S.C. § 2(c)(2)(C)(vii), makes clear the CFTC has jurisdiction over an account that is offered

Complaint -26
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

for the purpose of trading forex described in Section 2(c)(2)(C)(i) of the CEA, 7 U.S.C. § 2(c)(2)(C)(i).

71.     Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3), makes it unlawful for any person, by use of the mails or by any instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:  (1) to cheat or defraud or attempt to cheat or defraud any person; …or (3) willfully to deceive or attempt to deceive any person by any means whatsoever.

72.     Pursuant to Section 2(c)(2)(D)(iii) of the CEA, 7 U.S.C. § 2(c)(2)(D)(iii), Section 4b of the CEA, 7 U.S.C. § 6b, also applies to the leveraged and margined commodities transactions offered by Defendants as if they were a contract of sale of a commodity for future delivery.

73.     During the Relevant Period, Defendants, individually and acting as a common enterprise with the Scheme Entities, violate Section 4b(a)(2)(A)-(C) of the CEA, 7 U.S.C. § 6b(a)(2)(A)-(C), by (A) cheating or defrauding or attempting to cheat or defraud other persons; (B) willfully making or causing to be made to other persons any false report or statement and (C) willfully deceiving or attempting to deceive other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, by among other things:  (i) misappropriating customer assets; (ii) sending, or causing false trading records to be sent to customers; and (iii) sending or causing false account records to be sent to a customer.

74.     During the Relevant Period, Defendants violate  Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3), by willfully deceiving or attempting to deceive other persons in, or in connection with, the offering of leveraged, margined or financed off-exchange retail forex

Complaint -27
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

transactions with non-ECPs, by among other things:  fraudulently soliciting, via the websites, leveraged retail forex transactions with actual and prospective customers.

75.    Further, Defendants, individually and acting as a common enterprise with the Scheme Entities, violate Section 4b(a)(2)(A) and (C) of the CEA, 7 U.S.C. § 6b(a)(2)(A), (C), and with regard to leveraged retail forex transactions, Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3), by knowingly and/or recklessly making false or misleading statements of material facts to potential customers and failing to disclose material facts to customers in connection with contracts of sale of any commodity for future delivery (or leveraged, retail forex transactions "as if" they were contracts of sale of a commodity for future delivery pursuant to Section 2(c)(2)(C)(i) of the CEA, 7 U.S.C. §2(c)(2)(C)(i), or leveraged and margined commodities offered by Defendants as if they were a contract of sale of a commodity for future delivery pursuant to Section 2(c)(2)(D)(iii) of the CEA, 7 U.S.C. §2(c)(2)(D)(iii)) that is made, or to be made, for or on behalf of, or with, any other person other than on or subject to the rules of a designated contract market, including by stating that Aipu and FIL are regulated entities by a fictitous regulator and that they in fact offer live trading in a wide variety of commodities, and by omitting material facts to customers such as that:  (i) their assets are not be used for trading; (ii) their assets are misappropriated; and (iii) no trading occurs and the posted returns are fake, all in violation of Section 4b(a)(2)(A) and (C) of the CEA, 7 U.S.C. § 6b(a)(2)(A), (C), and with regard to leveraged retail forex transactions,  Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3).

Complaint -28
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

76.     The Defendants' misrepresentations and omissions of fact are material because they deprive the customers of valuable information that the customers would have considered when deciding to commit their fiat and digital assets.

77.     Defendants engage in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to: interstate wires for transfer of funds, email, websites, and other electronic communication devices.

78.     Defendants engage in the acts and practices described above willfully, intentionally, or recklessly.

79.     Lan Bai, acting both individually and as an agent of Aipu, engages in the acts and practices described above knowingly, willfully, or with reckless disregard for the truth.  Lan Bai is an active participant in the fraudulent scheme.  Lan Bai accepts customer funds wired to her personal bank accounts from customers, which contain notations specifically identifying the wires as intended for "Aipu."  Lan Bai misappropriates customer funds by wiring them to third parties associated with the fraudulent scheme instead of using the funds for trading as intended by customers.  Lan Bai also sends customers' digital assets to sending digital wallets associated with FIL, in furtherance of the common enterprise fraud.

80.     Bai, acting both individually and as the sole officer of Aipu, engages in the acts and practices described above knowingly, willfully, or with reckless disregard for the truth.  Bai is an active participant in the fraudulent scheme.  Bai established his corporation Aipu and acts as the "customer service" representative in emails to Scheme Customers.  Bai is also listed as the person responsible for creating Aipu's website.

Complaint -29
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

81.     Bai and Lan Bai collectively control Aipu directly or indirectly, and do not act in good faith and knowingly induce, directly or indirectly, Aipu to commit the acts and/or omissions alleged herein.  Therefore, pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b), Bai and Lan Bai are liable for Aipu's violations of Section 4b(a)(2)(A)-(C) of the CEA, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3).

82.     Li, acting both individually and as the sole officer of FIL, engages in the acts and practices described above knowingly, willfully, or with reckless disregard for the truth.  Li is an active participant in the fraudulent scheme.  Li established her corporation FIL in the United Kingdom.  Li is also the person responsible for FIL's website and its content, as the sole Director of FIL.

83.     Li controls FIL directly or indirectly, and does not act in good faith and knowingly induces, directly or indirectly, FIL to commit the acts and/or omissions alleged herein.  Therefore, pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b), Li is liable for FIL's violations of Section 4b(a)(2)(A)-(C) of the CEA, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3).

84.     Bai and Lan Bai act within the course and scope of their respective employment, agency, or office with Aipu.  Pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2023), Aipu is liable as the principal for Bai's and Lan Bai's violations of Section 4b(a)(2)(A)-(C), 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3).

85.     Li acts within the course and scope of her employment, agency, or office with FIL.  Pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

C.F.R. § 1.2 (2023), FIL is liable as the principal for Li's violations of Section 4b(a)(2)(A)-(C), 7

U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3).

86.    Each act of misappropriation, providing false trading and bank records to

customers, making misrepresentations of, or failing to disclose material information to, Scheme

Customers, including but not limited to those specifically alleged herein, is alleged as a separate

and distinct violation of Section 4b(a)(2)(A)-(C) of the CEA, 7 U.S.C. § 6b(a)(2)(A)-(C), and

Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3).

<u>**COUNT II**</u>
**(All Defendants)**

**FRAUD BY DECEPTIVE DEVICE OR CONTRIVANCE**

**Violations of Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3),**

**17 C.F.R. § 180.1(a)(1)-(3) (2023)**

87.    The allegations in paragraphs 1-86 are re-alleged and incorporated herein by

reference.

88.    Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), makes it "unlawful for any person,

directly or indirectly, to use or employ, or attempt to use or employ, in connection with any

swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or

subject to the rules of any registered entity, any manipulative or deceptive device or contrivance,

in contravention of such rules and regulations as the Commission shall promulgate . . . ."

89.    Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3), makes it:

 unlawful for any person, directly or indirectly, in connection with any swap, or
contract of sale of any commodity in interstate commerce, or contract for future
delivery on or subject to the rules of any registered entity, to intentionally or
recklessly:
1)    use or employ, or attempt to use or employ, any
       manipulative device, scheme, or artifice to defraud;

Complaint -31
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

> 2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or]
>
> 3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

90. The contracts offered for sale by Aipu are subject to the prohibitions of Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3).

91. During the Relevant Period, Defendants, individually and acting as a common enterprise with the Scheme Entities, violate Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3), by, among other things, in connection with contracts of sale of commodities in interstate commerce:  (1) using or employing, or attempting to use or employ, a manipulative or deceptive device or contrivance, scheme or artifice to defraud; (2) making misrepresentations and omissions of material fact to customers; and (3) engaging, or attempting to engage in any act, practice or course of business which operates as a fraud or deceit.  Defendants did so by, without limitation:  (i) misappropriating customer funds; (ii) sending or causing to be to be sent, false solicitations to customers; and, (iii) sending or causing false trading records to be sent to customers.

92. Further, Defendants, individually and acting as a common enterprise with the Scheme Entities, violate Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3), by, among other things, knowingly and/or recklessly making misrepresentations of and failing to disclose material facts to customers, including by failing to disclose that:  (i) their funds are not used for trading; (ii) their funds are

Complaint -32
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

misappropriated; and (iii) the online customer account statements posted by Aipu and FIL are completely fraudulent, no trading occurs and the posted returns false.

93.    The Defendants' misrepresentations and omissions of fact are material because they deprive customers of material facts that the customers would have considered when deciding to participate in trading of contracts of sale of commodities in interstate commerce.

94.    During the Relevant Period Aipu, directly and/or indirectly, violates Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3). At all such times, Bai and Lan Bai do not act in good faith or knowingly induce, directly or indirectly, Aipu to commit the acts and/or omissions alleged as violations of Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3), as set forth herein.  Pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b), Bai and Lan Bai are liable as controlling person for Aipu's violations Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3).

95.    During the Relevant Period FIL, directly and/or indirectly, violates Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3). At all such times, Li does not act in good faith or knowingly induces, directly or indirectly, FIL to commit the acts and/or omissions alleged as violations of Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3), as set forth herein.  Pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b), Li is liable as a controlling person for FIL's violations Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3).

Complaint -33
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

96.     During the Relevant Period Bai and Lan Bai act within the course and scope of their respective employment, agency, or office with Aipu.  Pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), Aipu is liable as a principal for Bai's and Lan Bai's violations of Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3).

97.     During the Relevant Period Li acts within the course and scope of her employment, agency, or office with FIL.  Pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), FIL is liable as a principal for Li's violations of Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3).

98.     Defendants engaged, and continue to engage, in the acts and practices described above willfully, intentionally, or recklessly.

99.     Defendants engaged, and continue to engage, in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to:  interstate wires for transfer of funds, email, websites, and other electronic communication devices.

100.    Each act of misappropriation, fraudulently providing false records, and making misrepresentations and failing to disclose material information to customers, including but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3).

## VII.   RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by 7 U.S.C. § 13a-1, and pursuant to the Court's inherent equitable powers, enter:

Complaint -34
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

A.       An order finding Defendants Li, FIL, Bai, Aipu, and Lan Bai liable for violating Sections 4b(a)(2)(A)-(C) and 6(c)(1) of the CEA, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 9(1), and Regulations 5.2(b)(1) and (3) and 180.1(a)(1)-(3), 17 C.F.R. §§ 5.2(b)(1), (3), 180.1(a)(1)-(3) (2023);

B.       An order of permanent injunction permanently restraining, enjoining, and prohibiting Defendants Li, FIL, Bai, Aipu, and Lan Bai and any other person or entity associated with them, from engaging in conduct described above, in violation of Sections 4b(a)(2)(A)-(C) and 6(c)(1) of the CEA, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 9(1), and Regulations 5.2(b)(1) and (3) and 180.1(a)(1)-(3), 17 C.F.R. §§ 5.2(b)(1), (3), 180.1(a)(1)-(3);

C.       An order of permanent injunction prohibiting Defendants Li, FIL, Bai, Aipu, and Lan Bai and any other person or entity associated with them from directly or indirectly:

(i)      Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the CEA, 7 U.S.C. § la(40));

(ii)     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2023)) for their own personal account(s) or for any account(s) in which any Defendant has a direct or indirect interest;

(iii)    Having any commodity interests traded on any Defendant's behalf;

(iv)     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

Complaint -35
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

(v)     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(vi)    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)(2023); and

(vii)   Acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a) (2023)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in 17 C.F.R. § 4.14(a)(9);

D.      An order directing Defendants Li, FIL, Bai, Lan Bai, and Aipu, as well as any successors thereof, holding companies, and alter egos, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the CEA and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

E.      An order directing Defendants Li, FIL, Bai, Lan Bai, and Aipu, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations of the CEA and Regulations described herein, and pre- and post-judgment interest thereon from the date of such violations;

F.      An order directing Defendants Li, FIL, Bai, Lan Bai, and Aipu, as well as any successors thereof, to provide a full accounting of all Scheme Customer funds they have received

Complaint -36
(C24-5815)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5568

during the Relevant Period as a result of the acts and practices that constituted violations of the CEA and Regulations, as described herein;

  G.  An order directing Defendants Li, FIL, Bai, Lan Bai, and Aipu to pay a civil monetary penalty, to be assessed by the Court, in an amount not to exceed the penalty prescribed by 7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584 (2015), title VII, Section 701, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2023), as amended 89 Fed. Reg. 4542 (Jan. 24, 2024), for each violation of the Act and Regulations described herein;

  H.  An order requiring Defendants Li, FIL, Bai, Lan Bai, and Aipu to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

  I.  Such other and further relief as the Court deems proper.

Dated:  September 27, 2024     Respectfully submitted,

             By: /s/ Timothy J. Mulreany
             Timothy J. Mulreany
             DC Federal Bar No. 467478
             tmulreany@cftc.gov
             **COMMODITY FUTURES TRADING COMMISSION**
             Three Lafayette Centre
             1155 21st Street, N.W.
             Washington, D.C. 20581
             Telephone:  (202) 418-5000

Complaint -37           Timothy J. Mulreany
(C24-5815)           CFTC
             1155 21st St, NW
             Washington, DC 20582
             202-418-5568