The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | ) ) ) |
| **Plaintiff,** | ) Civil Action No.: 3:24-cv-05815-BHS ) |
| **v.** | ) ) |
| **AIPU LIMITED,** | ) **CONSENT ORDER OF PERMANENT** |
| **FIDEFX INVESTMENTS LIMITED,** | ) **INJUNCTION AND OTHER** |
| **CHAO LI,** | ) **STATUTORY AND EQUITABLE** |
| **QIAN BAI, and** | ) **RELIEF AGAINST DEFENDANT LAN** |
| **LAN BAI** | ) **BAI** |
| | ) |
| **Defendants.** | ) |
| | ) |

## I.  INTRODUCTION

On September 27, 2024, Plaintiff Commodity Futures Trading Commission

("Commission" or "CFTC") filed a Complaint against Lan Bai, Chao Li ("Li"),  and Qian Bai

Consent Order -1
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

("Bai"), individually and as the controlling persons of the interrelated companies Aipu Limited

("Aipu") and Fidefx Investments Limited ("FIL"), (hereinafter, "Corporate Defendants")

(collectively the "Defendants"), for violations of Sections 4b(a)(2)(A)-(C) and 6(c)(1), of the

Commodity Exchange Act ("Act" or "CEA"), 7 U.S.C. §§ 6b(a)(2)(A)-(C), and 9(1), and

Commission Regulations ("Regulations") 5.2(b)(1), (3), and 180.1(a)(1)-(3), 17 C.F.R.

§§ 5.2(b)(1), (3), 180.1(a)(1)-(3) (2024).  Complaint, ECF No. 1.  On or about October 3, 2024,

Lan Bai voluntarily waived service of the Complaint and summons.  Waiver of Service of

Summons, ECF No. 6.

## II.   CONSENTS AND AGREEMENTS

To effect partial settlement of certain matters alleged in the Complaint against Lan Bai

without a trial on the merits or any further judicial proceedings, Lan Bai:

1.     Consents to the entry of this Consent Order for Permanent Injunction and

Other Equitable Relief ("Consent Order").

2.     Affirms that she has read and agreed to this Consent Order voluntarily, and

that no promise, other than as specifically contained herein, or threat, has been made by the

CFTC or any member, officer, agent or representative thereof, or by any other person, to

induce consent to this Consent Order.

3.     Acknowledges service of the summons and Complaint.

Consent Order -2
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

4.    Admits the jurisdiction of this Court over her and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1.

5.    Admits the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act.

6.    Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-l(e).

7.    Waives:

A.    Any and all claims that she may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the CFTC in conformity therewith, Part 148 of the Regulations, 17 C.F.R. § 148.1 (2024), relating to, or arising from, this action.

B.    Any and all claims that she may possess under the Small Business Regulatory Enforcement Fairness Act, Pub. L. 104-121, Subtitle B, Section 223, 110 Stat. 847, 857-74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action.

C.    Any claim of Double Jeopardy based upon the institution of this action, or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

D.    Any and all rights of appeal from this Consent Order.

8.    Agrees that she is not a prevailing party in this action for purposes of the waiver of any and all rights under the Equal Access to Justice Act as specified in subpart A of the preceding paragraph.

Consent Order -3
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

9.      Consents to the continued jurisdiction of this Court over her for the purpose of implementing and carrying out the terms and conditions of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action, even if Lan Bai now or in the future resides outside the jurisdiction of this Court.

10.     Agrees that she will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon.

11.     Agrees that neither she nor any of her agents or employees acting under her authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating, or tending to create, the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendant's:  (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the CFTC is not a party.  Lan Bai shall comply with this agreement, and

Consent Order -4
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

shall undertake all steps necessary to ensure that all of her agents or employees acting under her authority or control understand and comply with this agreement.

12.    Consents to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which she admits.

13.    Consents to the use of findings and conclusions in this Consent Order in this proceeding, and in any other proceeding brought by the CFTC or to which the CFTC is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof.

14.    Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the CFTC or to which the CFTC is a party, other than:  a statutory disqualification proceeding; proceeding in bankruptcy, or receivership; or, proceeding to enforce the terms of this Order.

15.    Agrees to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by paragraph 99, of Section VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against her, whether inside or outside the United States.

Consent Order -5
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

16.     Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Lan Bai in any other proceeding.

17.     Consents to pay restitution, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the CFTC and/or hearing before this Court.

18.     Consents to pay disgorgement, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the CFTC and/or hearing before this Court; and

19.     Consents to pay a civil monetary penalty, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the CFTC and/or hearing before this Court.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

20.     The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein. The Findings and Conclusions in this Consent Order are not binding on any other party to this action.

Consent Order -6
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

    **A.  Findings of Fact**

        **1.      The Parties to this Consent Order**

21.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act and Regulations.

22.     Defendant Lan Bai is a U.S. citizen who resides in Tulsa, Oklahoma.  Lan Bai has never been registered with the Commission in any capacity.

        **2.      Non-settling Defendants**

23.     Defendant Qian Bai resides in the PRC.  Pursuant to the records of the United Kingdom's Companies House registration, Bai incorporated Aipu on March 23, 2023, and is listed as the sole Director of Aipu.  Bai is listed as residing in the PRC, with a correspondence address in West Midlands, England, United Kingdom.  Bai is also the person who registered the Aipu website, www.aipufx.com, on or about March 17, 2023, through *Go Daddy.com*, a U.S.-based company, using a purported address in Kowloon, Hong Kong, a special administrative region of the PRC.  Bai communicates directly with customers using the email address "Qian Bai service@aipufx.com," WeChat, as well as Aipu's own application "AIPUFX.cc" ("AIPUFX.cc" or the "application").  Bai is not registered in any capacity with the Financial Conduct Authority,

Consent Order -7
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

which is the United Kingdom's regulator of financial firms and their employees who market and

provide services to customers related to financial products.  Bai has never been registered with

the Commission in any capacity.

24.      Defendant Chao Li resides in the PRC.  Pursuant to the records of the United

Kingdom's Companies House registration, Li incorporated FIL on November 3, 2023, and is

listed as the sole Director of FIL.  Li is listed as residing in the PRC, with a correspondence

address in West Midlands, England, United Kingdom that is the same address used by Bai.  Li is

not registered in any capacity with the Financial Conduct Authority, the United Kingdom's

prudential regulator.  Li has never been registered with the Commission in any capacity.

25.      Defendant Aipu Limited is a "private limited company" organized pursuant to the

laws of the United Kingdom.  Pursuant to the records of the United Kingdom's Companies

House registration, Aipu was created on or about March 23, 2023, and has a registered office

address located in Manchester, England.  Aipu has never been registered with the United

Kingdom's Financial Conduct Authority in any capacity.  Aipu has never been registered with

the Commission in any capacity.

26.      Defendant Fidefx Investments Limited is a "private limited company" organized

pursuant to the laws of the United Kingdom.  Pursuant to the records of the United Kingdom's

Companies House registration, FIL was created on or about November 3, 2023, and has a

Consent Order -8
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

registered office address located in Coventry, West Midlands, England.  FIL has never been registered with the United Kingdom's Financial Conduct Authority in any capacity.  FIL has never been registered with the Commission in any capacity.

### 3.  Statutory Background

27.    The purpose of the CEA is to "serve the public interests . . . through a system of effective self-regulation of trading facilities, clearing systems, market participants and market professionals under the oversight of the Commission," as well as "to deter and prevent price manipulation or any other disruptions to market integrity; to ensure the financial integrity of all transactions subject to [the CEA] and the avoidance of systemic risk; to protect all market participants from fraudulent or other abusive sales practices and misuses of customer assets; and to promote responsible innovation and fair competition among boards of trade, other markets and market participants."  Section 3 of the CEA, 7 U.S.C. § 5.

28.    Section 2(c)(2)(C)(i)(I) of the CEA, 7 U.S.C. § 2(c)(2)(C)(i)(I), in relevant part, applies to any agreement, contract, or transaction in, or in connection with, forex that is offered to, or entered into with, a person that is not an eligible contract participant ("ECP") "on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis," subject to certain exceptions not applicable here.

Consent Order -9
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

29.     Section 2(c)(2)(D)(i)(I) of the CEA, 7 U.S.C. § 2(c)(2)(D)(i)(I), in relevant part, applies to any agreement, contract, or transaction in, or in connection with, any commodity that is offered to, or entered into with, a person that is not an ECP "on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis," subject to certain exceptions not applicable here.

30.     7 U.S.C. § 1a(18)(A)(xi) defines an ECP, in relevant part, as an individual: (a) who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or (b) $5 million if the individual enters into the transaction to "manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."  Individuals who do not meet these criteria are non-ECPs.

**4.  Defendants' Fraudulent Scheme**

31.     From at least February 6, 2023 to the present ("Relevant Period"), Defendants engaged in a fraudulent common enterprise scheme whereby Defendants and their Solicitors solicited prospective and actual customers, the majority of whom are located in the U.S., through the websites, cell phone applications such as WeChat, WhatsApp, Line, and Defendant Aipu's own application "AIPUFX.cc", other social media platforms and/or messaging applications, and unregistered associated persons.  Upon information and belief, the Aipu website was no longer operating as of late April to early May of 2024.  The FIL website, www.fidefxltd.com,

Consent Order -10
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

essentially a mirror image of the Aipu website, began operating on or about October 23, 2023, and continued operating until at least August 2024.

### a) Websites' Solicitations

32.    Defendants, through the websites, offered actual and potential customers highly leveraged trading in both retail forex pairs, with "variable spreads" and leverage of 1:1000, and in commodity futures contracts in precious metals, energy and agriculture futures contracts at 1:500 leverage.  The websites, controlled by Bai and Li respectively as the sole Directors of Aipu and FIL respectively, made identical representations to actual and prospective customers.  Aipu's website stated: "At the heart of AIPU Limited's business is our commitment to offer clients competitive spreads and execution on major currency pairs."  FIL's website used the same representation:  "At the heart of FIL's business is our commitment to offer clients competitive spreads and execution on major currency pairs."  Aipu and FIL further affirmatively misrepresented, through the websites, that:

> "[Aipu Limited/FIL] is a fully regulated global forex and CFD broker. Founded
> by a dedicated, veteran team of online finance professionals, the company has
> extensive experience offering innovative trading products and exceptional service
> and support.  Combining technological ingenuity and attentive, personal service,
> [Aipu Limited/FIL] offers traders a superior trading experience, on one platform
> called FX6. Our cross-device capability means you can trade at your Office, home

Consent Order -11
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

or on the go via desktop, laptop, mobile or tablet. Moreover, our highly trained, dedicated account managers are available 24 hours a day to provide you expert, Professional guidance in your language, whenever you need…

A regulated broker, holding licences [*sic*] from the Vanuatu Financial Control (VFC), [Aipu Limited/FIL] is authorised to offer financial services across Europe, Far East, Asia and America. Committed to upholding strictest regulatory standards, we ensure total transparency and guarantee the privacy and security of your account with the most sophisticated safety protocols."

(FIL's website made the same claim, simply substituting "FIL" for Aipu Limited.)

33.    These representations were false.  Neither Aipu nor FIL offered actual leveraged trading in commodity interests.  Neither Aipu nor FIL was "fully regulated" or licensed.  There is no such entity named the "Vanuatu Financial Control."   The Vanuatu Financial Services Commission ("VFSC") is the financial regulatory authority of Vanuatu, an island country in the southwestern Pacific Ocean.  The VFSC has never registered or licensed Aipu, FIL, or any other Defendant in any capacity.

34.    The Defendants cannot lawfully solicit assets, or accept assets, from customers in the United States to engage in trading commodity interests on their behalf, as none of the Defendants have ever been registered with the Commission in any capacity.

Consent Order -12
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

35.    Regarding the "FX6" trading platform, Aipu and FIL each represented it can be used on "PC, Web, IOS and Android" and can be utilized to trade customers' fiat and digital assets.  Defendants, through the websites, represented to actual and prospective customers: "The FX6 trading platform is designed for Forex, futures and CFD trading. With FX6, traders can analyze financial markets, perform advanced trading operations, run trading robots (Expert Advisors) and copy deals of other traders."

36.    These representations were also false.  Defendants failed to advise actual and prospective customers that there were no customer accounts at either Aipu or FIL, that no trading took place, and that no trading took place by use of the "FX6 trading platform" or otherwise. These misrepresentations and omissions of facts were material, as a reasonable customer would want to know that there were no trading accounts, that the account statements provided to them by Defendants were false, that no trading took place at either Aipu or FIL, and that their assets were misappropriated by the Defendants acting as a common enterprise.

37.    The Defendants, acting as a common enterprise, used the websites to target unsophisticated customers who were more susceptible to believe Aipu's and FIL's fraudulent representations.  The Defendants, via the websites, made no inquiry as to whether a potential customer qualified as an ECP.  Instead, the websites each falsely represented that a prospective customer could "open an account in five minutes" and that "true ECN pricing with added

Consent Order -13
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

liquidity from over 50 different banks and dark pool liquidity sources mean[t] tighter spreads across 60 forex pairs 24/5."

38.     The Defendants, via the Aipu and FIL websites, falsely represented that Aipu and/or FIL offered customers a legitimate live trading platform. No actual trading took place on customers' behalf.  Instead, once Defendants received a customer's assets, such assets were misappropriated by the Defendants by sending customer assets to offshore bank accounts with no association with commodity trading.  Customers were provided a username and password for online access via each of the websites to view what was represented to them as their account statement, which showed their purported trading account carried account balances consistent with the amount of assets transferred by customers to the Defendants.  Further, the customers' online account statements showed profitable trading in their purported trading account at AIPU or FIL.  These online account statements were false, as no trading took place on behalf of customers.

**b)  Direct Solicitations via Messaging Apps and Similar Tools**

39.     The direct solicitation of customers followed a similar pattern.  One customer (Customer "A"), who is a resident of Hawaii, described his experience as follows:

> "In July 2023 I was contacted through an online messaging App the Line (call and
> message app) by someone that goes by Lillian. We started messaging each other
> in the beginning about different things and then it turned to investing and spot
> gold. Lillian shared that she studied spot gold and was pretty good at making

Consent Order -14
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

small profits between 10% to 30% per trade involving trades of leveraged or margined gold-U.S. dollar pair ("XAUUSD") transactions. She chatted with me for a while till she persuaded me to sign up for an account with Aipu Limited. Once I signed up for the account, she said that I should sign up for an account with Crypto.com so I could deposit money (crypto) into my Aipu account. Lilian told me she will co-invest with me and I saw deposits she claims to have made credited to my aipufx account. I would receive text from Lilian proving me with signal to enter and exit my trades. From August 2023 through to October 2023 I transferred 117.26 ETH - equivalent to over $400k - and I traded my account up to $915k including over $273k in rewards."

40.    When Customer A attempted to withdraw assets, Aipu and Bai fraudulently gave him various excuses as to why a withdrawal of assets from his purported trading account could not take place. Ultimately, Customer A lost all assets he transferred to Aipu to secure commodity interest trading on his behalf.

41.    A second customer (Customer "Z"), who is a resident of Indiana, had a similar experience. Customer Z was contacted on the social media application WeChat by a Solicitor purportedly identified as "Arlene" to set up a trading account on Aipu's website. As described by Customer Z, he sent money directly to Lan Bai, pursuant to the directions of Aipu's Solicitor "Arlene." Customer Z described his experience as follows:

She [Arlene] showed me step-by-step how to set up different accounts, including several crypto accounts and AIPU trading account, and how to trade in AIPU. We only traded gold price (sic) through XAUUSD on AIPU.

Now I suspected that she may be an insider of AIPU.

Consent Order -15
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

First, she knows the timing when price will jump (sic) .  In several trades I did with her, she told me ahead of the trade at exact what time to buy (sic), and after I placed orders, there tended to be a spike in price.  After a few minutes, the price will come down. But before the price came down, she already instructed me to sell (cover).   She credited her knowledge, including the timing of the trade, to a team of friends doing some research. Below is a screen capture of a trade taking place on June 23, 2023.  I placed an order at the price of 1920.9 before the blue spike and sold (cover) at the price of 1923 within 2 minutes window (sic).



Second, she introduced me to an VIP program at AIPU to encourage clients to deposit more money.  To help me meet my VIP requirement, she also deposit (sic) a total of $580,000 in four transactions to my accounts.  She must be insider of AIPU to explain this behavior.

Consent Order -16
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

She lives a rich lifestyle in San Francisco and takes private jet back to China through Hong Kong.  I think she is a beneficiary of the AIPU online frauds.

After Chase bank and three crypto sites blocked my money transfer to Hong Kong, I wired money twice to Liang's friends and associates, and hoping through them to transfer money to AIPU to fulfill my VIP requirement and to unfreeze my account there.  The first time, on September 15, 2023, $125K was wired to her assistant ["LT"] with her instruction, and the money eventually was deposited to my AIPU account.   The 2nd time, on September 20, 2023, $18.5K was wired to her friend Lan Bai.  After a delay, the money was eventually forwarded to Liang.  But she did not transfer it to AIPU since the deadline to fulfill my VIP requirement has passed.  I asked her to return the funds to me later, and she agreed first and then cut me off completely.

42.    The above screenshot displaying "XAU/USD" is from Aipu's own application AIPUFX.cc, and purports to show a trading record in which Aipu entered into a currency pair transaction for the benefit of Customer "Z's" trading account.  XAU/USD is the label for gold to US Dollar traded on the foreign exchange markets: Gold (XAU) is traded against the US dollar (USD), and its price represents the cost of one ounce of gold in USD.  Although it involves gold, XAU/USD is traded on the forex marketplace like a currency pair.  The transaction statement displayed was false, as no trading took place by Aipu on behalf of Customer "Z."

43.    Defendants, acting as a common enterprise through the acts of Li, Bai and/or Lan Bai, moved customers' assets among themselves, using common digital asset wallets to misappropriate customer assets.  In one such transaction, Customer "L," who is a resident of Pierce County, Washington, was directed by Solicitors to forward digital assets to Aipu's digital

Consent Order -17
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

wallet address to secure purported commodity trading in Customer "L's" trading account. However, an analysis of the transaction purportedly between Customer "L" and Aipu reveals that the sending digital wallet address was actually associated with FIL.

44.     Once customers who did not already have an account with Aipu or FIL decided to participate, the Solicitors introduced them to Aipu and/or FIL, where customers set up their "trading accounts" via Aipu's website and FIL's website, respectively.  Solicitors fraudulently claimed to have trading accounts at Aipu and/or FIL, and further claimed to trade commodity interest contracts successfully.  For example, Aipu's customer service representatives ("Customer Service") provided customers with wire transfer instructions regarding the bank accounts to which they should wire their assets, such as Aipu's bank accounts or, digital wallet addresses if the customers were transferring digital assets.  A number of customers of both Aipu and FIL were directed to wire funds to bank accounts located in the U.S. which were solely controlled by Lan Bai.  Once customer funds were accepted into her bank accounts, Lan Bai controlled the movement of customer funds, and controlled whether customer funds were misappropriated.

45.     Bai directly communicated with customers, including via a Customer Service email address, and knowingly or recklessly omitted material information in communications with

Consent Order -18
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

customers, as well as providing materially false information, in said communications with customers.

46.      Lan Bai communicated with both Aipu and FIL customers via the Zelle payment application, and then accepted wire transfers of customer funds into her personal bank accounts. For example, on September 20, 2023, Customer "Z" sent his last wire transfer to Aipu by sending $18,500 to Lan Bai's personal bank account.  Between October 2, 2023, to November 7, 2023, Customer "Z" sent messages to a Solicitor identified as "Liang" via WeChat about Lan Bai returning his $18,500, and he also spoke with Lan Bai directly on the telephone and via text message about returning his $18,500.  In another transaction, on February 4, 2024, FIL Customer "C" sent a Zelle transfer of $100 to Lan Bai's JPMC account ****3602 with a notation stating: "Fidefx."

47.      As part of the fraudulent scheme, Aipu's Customer Service assisted customers in setting up their trading accounts by instructing them to download Aipu's own application "AIPUFX.cc" onto their cellular telephone or mobile device.  This application allegedly allowed customers to trade commodity interests via the "FX6" trading platform.

48.      In fact, the application did not interface with a legitimate trading platform and the customers were actually interfacing with individuals who were also part of the fraudulent scheme.  The application only mimicked the features of a live trading platform by, among other

Consent Order -19
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

things, purportedly allowing customers to enter and track their trades, interface with customer service representatives, and check their purported account balances.  The information contained in the application, such as trade data and account history, was controlled by Bai and Aipu and was false.

49.    Throughout the Relevant Period, Defendants omitted material facts in communications with actual and prospective customer, including, but not limited to: there were no trading accounts; customers' assets were not used to trade commodity interests; Defendants were operating a "Ponzi" scheme; and, customers' assets were misappropriated by the Defendants as part of a common enterprise fraud.

50.    After customers wired funds to the personal bank accounts of Lan Bai and/or others, these customers' online account statements showed the assets they transferred through Lan Bai and/or others were credited to the customers' trading account.  These transactions, together with the Zelle transactions, demonstrate that Lan Bai was personally involved in the operation of the common enterprise fraudulent scheme on behalf of both Aipu and FIL, and that she controlled part of the movement of customer funds during the Relevant Period.  Each time Lan Bai accepted into her personal bank accounts the transfer of assets from customers, these assets were not transferred to a trading entity.  Instead, Lan Bai misappropriated customers' assets by transferring them to non-trading corporate entities and persons located in the PRC,

Consent Order -20
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

Malaysia, and elsewhere ("Scheme Entities"). At no time did Lan Bai reject any deposit of customer funds wired into her personal bank accounts, nor did she ever make inquires to defrauded customers as to why customers were wiring funds. Lan Bai opened and used at least five (5) bank accounts carried in her name to accept customer funds during the Relevant Period. Lan Bai retained a portion of the customer funds wired into her personal bank accounts during the Relevant Period, and used said funds for her personal benefit. During the Relevant Period, Defendant Lan Bai accepted a total of $448,678 from customers into her personal bank and digital asset accounts. Defendant Lan Bai has advised the CFTC that she was initially a customer of Aipu, and that she lost the $150,000 that she invested with the other Defendants as a customer. Defendant Lan Bai has further advised the CFTC that she became involved in the fraudulent scheme in an attempt to recoup the $150,000 she initially invested with the other Defendants as a customer.

51.    Defendants used the false trading statements showing alleged profits to encourage customers to transfer additional assets for trading. Initially after opening a trading account, customers were able to withdraw small amounts of their assets. In fact, some Solicitors encouraged customers to withdraw some of their assets from their account as proof that the trading was legitimate. These withdrawals were not profits from trading, but were the assets of later-in-time customers in the nature of a "Ponzi" scheme.

Consent Order -21
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

52.     If customers subsequently attempted to close their account or withdraw large amounts from their trading accounts, they were falsely advised that they could not withdraw their assets unless they first paid an additional "tax" or a "fee," which was as large as thirty percent (30%) of their purported account balance.

53.     The purported trading accounts were also funded through digital asset transfers to Aipu's and FIL's digital wallet addresses via digital accounts customers hold at digital brokers. As noted previously, some digital asset transfers by customers holding purported trading accounts at Aipu were in fact transferred to digital wallet addresses associated with FIL.  Some customers wired fiat currency to the personal accounts of Lan Bai and others, who then forwarded the fiat currency to bank accounts carried in the name of non-trading Scheme Entities in the PRC and Malaysia.

54.     Bai individually, and as the sole Director and a controlling person of Aipu, knew or recklessly disregarded that the misappropriated assets were customer assets intended to be used solely for the purpose of trading commodity interests.

55.     Lan Bai knowingly or recklessly disregarded that she was accepting customer assets into her personal bank accounts, which were intended to be used for trading commodity interests.  Instead of using customer assets to trade commodity interests, Lan Bai misappropriated customer assets by wiring funds to Scheme Entities' bank accounts in the PRC

Consent Order -22
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

and Malaysia that were not associated with trading commodity interests.  At no time during the Relevant Period did Lan Bai reject a customer deposit or Zelle transaction, advise her bank representative that funds were being deposited into her account(s) from unknown sources, or take any step to question customers regarding why they were wiring funds.  Each time Lan Bai accepted customer funds in the accounts she solely controls, she was solely in control of subsequently misappropriating said funds by wiring the customer funds she accepted to non-trading accounts in the PRC, Malaysia, and elsewhere.

56.     Li individually, and as the sole Director and a controlling person of FIL in charge of FIL's day-to-day activities, knew or recklessly disregarded that the misappropriated assets were customer assets intended to be used solely for the purpose of trading commodity interests.

**5. Defendants and the Scheme Entities Operated as a Common Enterprise**

57.     Together with Scheme Entities, Defendants operated as a common enterprise with a shared purpose of defrauding customers.  Defendants Aipu and FIL are shell companies which served no legitimate business purpose other than for Li, Bai and Lan Bai to accept and funnel assets to the Scheme Entities.

58.     Defendants and the Scheme Entities operated as an integrated whole in that they shared common control, assets, customers, fraudulent solicitations, and funneled customer assets

Consent Order -23
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

though common financial account to common entities located in the PRC, Malaysia, and elsewhere.

59.     The nearly identical websites the Defendants used to tout Aipu's and FIL's purported "investments" in commodity interests demonstrated a commonality of control and design to defraud customers.  Defendants and the Scheme Enterprise shared common customers, assets, digital asset accounts, solicitations, and were controlled by the same individuals.

60.     The coordinated manner in which FIL and Aipu interacted with customers and the Scheme Entities indicates there was a common control being exercised.  For example, customer fiat assets were deposited into Lan Bai's multiple personal bank accounts and were reflected very quickly in the customers' purported online trading account balances as shown on the AIPUFX.cc application.  On at least six (6) occasions, Lan Bai accepted customer fiat assets, from customers located in the U.S., via Zelle transfers that mention "Aipu" in the memo section, placing her on actual notice of the purpose of the transfers.  In a seventh Zelle transaction, Lan Bai accepted customer fiat assets, from a customer located in the U.S. that mentioned "Fidefx" in the memo section, placing her on actual notice of the purpose of the transfer.  Lan Bai then failed to transfer the customers' fiat assets to Aipu and/or FIL or accounts carried in the name of Aipu and/or FIL, but instead misappropriated the customer's fiat assets by wiring them to third party Scheme Entities located offshore.

Consent Order -24
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

61.     As part of the common enterprise, Defendants moved customers' digital assets among themselves, using common digital asset wallets to misappropriate customer assets. Customers were directed by Solicitors to forward digital assets to Aipu's digital wallet address to secure purported commodity trading in customers' trading accounts.  However, an analysis of transactions purportedly between customers and Aipu reveals that the sending digital wallet address was actually associated with FIL, not Aipu, demonstrating the Defendants commingled customer assets among themselves.

**6.     Defendants Bai and Lan Bai Were Controlling Persons of Aipu, and Knew or Recklessly Disregarded that Customer Assets Sent to Aipu Were Not Used for Trading**

62.     As the sole Director of Aipu, and therefore the person in day-to-day control of Aipu, Bai had personal knowledge of the operation of Aipu, the solicitations of customers via the website operated by Aipu, the origin of funds and digital assets being accepted into Aipu's bank accounts and digital wallets, and was responsible for the daily disposition of those assets.  As such, Bai was a controlling person of Aipu during the Relevant Period.  Bai knew that neither he nor Aipu held any accounts for trading commodity interests.  Bai knew that neither he nor Aipu were trading commodity interests on behalf of Scheme Customers, either from the Unites States or elsewhere.  Bai knew he was not registered with the Commission in any capacity, and could not lawfully accept customer assets to trade commodity interests on their behalf.

Consent Order -25
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

63.     Bai was also the person responsible for registering Aipu's website, and as the sole Director of Aipu, Bai was solely responsible for the content of the website, including the fraudulent solicitations to actual and prospective customers.

64.     Bai was engaged in directly making false solicitations to customers and was responsible for omitting material facts in his direct communications with customers.  For example, some customers were convinced to transfer additional assets to Aipu after being advised that additional deposits would allow them to participate in a "Member Anniversary VIP Special."  In fact, the "VIP Special" was only another fraudulent tactic used by Defendants to misappropriate additional assets from customers.  The experience of Customer "Z" in regard to the "VIP Special" followed Bai's typical fraudulent solicitation pattern.  Customer "Z" was sent a "VIP Special" promotional flyer whereby a Scheme Customer was encouraged to attain one of nine "VIP membership levels" based on the amount of additional assets deposited into the customer's purported trading account.

65.     In one email communication with Customer Z, Bai stated:

Hello, this is an anniversary activity picture (sic) launched by our company to give back to new and old users.  The activity is valid for 80 days after you make a reservation.  Once you make a reservation, you need to complete the reservation level before you can withdraw the reward funds.  If the reservation is not completed, there will be a penalty of 3% of the deposit amount.  If you complete the appointment, you can withdraw all your funds immediately.  If you fail to complete the promotion within 80 days, you pay and extension fee of US $20,000

Consent Order -26
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

1

2

for an extension of 10 working days…Please be aware of the anniversary event rules, thank you.

66.     All of these statements were false.  Bai fraudulently omitted material facts in this email to the customer, including but not limited to failing to advise the customer that: The customer's assets would be misappropriated and not used for trading even if the customer completed the supposed reservation levels and appointments.  Moreover, the communication was made to defraud the customer of additional assets without disclosing that the customer's previous assets had been misappropriated.  As the sole officer of Aipu, Bai had actual knowledge that this "promotion" was fraudulent.

67.     Lan Bai was also a controlling person of Aipu as the sole signatory in control of her personal bank accounts that accepted customer assets.  Lan Bai accepted assets directly from customers, and communicated directly with customers via instant messaging applications and telephone calls.  Lan Bai knew or recklessly disregarded that she was not trading commodity interests on behalf of customers, nor was she forwarding customer assets to any entity that traded commodity interests on behalf of Aipu or FIL's customers.  Lan Bai knew or recklessly disregarded that she did not forward customer trading assets to any account carried in the name of Aipu.

68.     Further, Lan Bai knew she was not registered with the Commission in any capacity, and knew or recklessly disregarded that Defendants could not lawfully solicit or accept

Consent Order -27
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

assets from customers to trade commodity interests. Lan Bai knew that she did not hold any forex or commodity futures trading accounts in the United States, could not enter into such trades on behalf of U.S. customers, and knew or recklessly disregarded Defendants were not forwarding customer assets they received to an FCM or RFED to trade on behalf of customers.

69.     For example, in the "Payment Memo" section of at least six (6) Zelle transactions between Lan Bai and a U.S. customer, it was noted that the assets were transferred to Lan Bai for "Aipu deposit," "Aipu Lan Bai," "Aipu Lan Bai #2," "Aipu Lan Bai #3," "Aipu Lan Bai #4," and "Aipu Lan Bai #5." By these notations, and other interactions with customers, Lan Bai knew, or recklessly disregarded, that the assets she accepted, and subsequently misappropriated, were customer assets intended to be sent to Aipu and used solely for the purpose of trading forex and/or commodity futures contracts via Aipu. Accordingly, Lan Bai had actual knowledge that the assets she accepted into her personal bank account were for purposes of trading commodity interests at Aipu, and not for other services or goods.

**7. Defendant Li was the Controlling Person of FIL and Knew or Recklessly Disregarded that Customer Assets Sent to FIL Were Not Used for Trading**

70.     As the sole Director of FIL, and therefore the person in day-to-day control of FIL, Li had personal knowledge of the operation of FIL, the solicitations of customers via the website operated by FIL, the origin of funds and digital assets accepted into FIL's bank accounts and

Consent Order -28
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

digital wallets, and was responsible for the daily disposition of those assets. As such, Li was a controlling person of FIL during the Relevant Period.

71.     Li knew that neither she nor FIL held any forex or commodity futures trading accounts. Li knew that neither she nor FIL were trading forex or commodity futures on behalf of Scheme Customers, either from the Unites States or elsewhere. Li knew she was not registered with the Commission in any capacity and could not lawfully accept customer assets to trade commodity interests on their behalf.

## B. Conclusions of Law

### 1. Jurisdiction and Venue

72.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that district courts have jurisdiction to hear actions brought by the Commission for injunctive relief or to enforce compliance with the Act whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in, an act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

Consent Order -29
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

73.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transacted business in this jurisdiction, and certain transactions, acts, and practices alleged in the Amended Complaint occurred within this District.

### 2.    Fraud in Connection with Forex

74.     7 U.S.C. § 6b(a)(2)(A)-(C) makes it unlawful "for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, . . .  that is made, or to be made, for or on behalf of, or with, any other person other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement . . .[or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person."

75.     Pursuant to 7 U.S.C. § 2(c)(2)(C)(iv), 7 U.S.C. § 6b applies to the forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i) "as if" they were contracts of sale of a commodity for future delivery.  Further, 7 U.S.C. § 2(c)(2)(C)(ii)(I) makes forex agreements, contracts, or transactions "subject to" 7 U.S.C. § 6b.  Finally, 7 U.S.C.

Consent Order -30
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

§ 2(c)(2)(C)(vii) makes clear the CFTC has jurisdiction over an account that is offered for the purpose of trading forex.

76.     Pursuant to Section 2(c)(2)(D)(iii), 7 U.S.C. § 2(c)(2)(D)(iii), 7 U.S.C. § 6b also applies to the leveraged and margined commodities transactions offered by the Defendants as if they were a contract of sale of a commodity for future delivery.

77.     17 C.F.R. § 5.2(b)(1) and (3) (2024) make it unlawful for any person, by use of the mails or by any instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:  (1) to cheat or defraud or attempt to cheat or defraud any person; or (3) willfully to deceive or attempt to deceive any person by any means whatsoever.

78.     Lan Bai engaged in such acts by the use of the mails or other means or instrumentality of interstate commerce including but not limited to: interstate wires for transfer of funds, email, websites, and other electronic communication devices

79.     Lan Bai engaged in the acts and practices described above willfully, intentionally, or recklessly.  Lan Bai accepted customer funds wired to her personal bank accounts from customers, which contained notations specifically identifying that the wires were intended for "Aipu."  Lan Bai misappropriated customer funds by wiring them to third parties associated with the fraudulent scheme instead of using the funds for trading as intended by customers.  Lan Bai

Consent Order -31
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

also sent customers' digital assets to sending digital wallets associated with FIL, in furtherance of the common enterprise fraud.

80.    Lan Bai, individually, and while acting as a common enterprise with the Defendants and the Scheme Entities, violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1), (3), by cheating or defrauding, or attempting to cheat or defraud other persons in or in connection with, the offering of leveraged, margined or financed retail forex transactions with non-ECPs, by, among other things:  (i) failing to disclose material facts to actual and prospective customers, including that no forex trading was conducted on behalf of customers; (ii) misappropriating customer funds; (iii) sending, or causing false trading records to be sent to customers; and (iv) sending or causing false account records to be sent to a customer.

81.    Lan Bai individually, and while acting as a common enterprise with the Defendants and the Scheme Entities, violated 17 C.F.R. § 5.2(b)(1) and (3) (2024) by willfully deceiving or attempting to deceive other persons in, or in connection with, the offering of leveraged, margined or financed off-exchange retail forex transactions with non-ECPs, by among other things: misappropriating customers funds, and fraudulently soliciting, via the websites, leveraged retail forex transactions with actual and prospective customers.

82.    Lan Bai was a controlling person of Aipu and has failed to act in good faith, or has knowingly induced, directly or indirectly, the acts of Aipu constituting the violations of 7

Consent Order -32
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

U.S.C. § 6b(a)(2)(A), (C) and 17 C.F.R. § 5.2(b)(1), (3).  Accordingly, Lan Bai is liable for each and every violation of the Act committed by Aipu, pursuant to 7 U.S.C. 13c(b), during the period she acted as its controlling person.

### 3.    Fraud by Deceptive Device or Contrivance

83.    7 U.S.C. § 2(c)(2)(C)(ii)(I) makes forex agreements, contracts, or transactions "subject to" 7 U.S.C. § 9(1).  Further, 7 U.S.C. § 2(c)(2)(C)(vii) makes clear the CFTC has jurisdiction over an account that is offered for the purpose of trading forex.

84.    7 U.S.C. § 9(1) makes it "unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap, a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of" the Regulations.

85.    17 C.F.R. § 180.1(a)(1)-(3) (2024) provides:

It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

(1)    Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
(2)    Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or]

Consent Order -33
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

(3)    Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

86.    Lan Bai individually, and while acting as a common enterprise with the Defendants and the Scheme Entities, violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) by, among other things, in connection with contracts of sale of commodities in interstate commerce: (i) omitting to state material facts necessary in order to make statements made not untrue or misleading, including omitting that no forex trading was conducted on behalf of customers; and (ii) misappropriating customer funds.

87.    Lan Bai controlled Aipu, directly and/or indirectly, at the time it violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3).  At all such times, Lan Bai did not act in good faith or knowingly induced, directly or indirectly, Aipu to commit the acts and/or omissions alleged as violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).  Pursuant to 7 U.S.C. § 13c(b), Lan Bai is liable as a controlling person for Aipu's violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3), during the period she acted as its controlling person.

88.    Lan Bai engaged in the acts and practices described above intentionally or recklessly.

89.    Lan Bai engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to: interstate wires for transfer of funds, email, websites, and other electronic communication devices.

Consent Order -34
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

# IV.   PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

90.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Lan Bai is permanently restrained, enjoined, and prohibited from directly or indirectly:

   a.   Cheating or defrauding or attempting to cheat or defraud any other person, willfully making or causing to be made to another person any false report or statement, or willfully deceiving or attempting to deceive any other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any person, or otherwise violating 7 U.S.C. § 6b(a)(2)(A)-(C) or 17 C.F.R. § 5.2(b)(1), (3) (2024).

   b.   (1) Using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud; (2) making or attempting to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (3) engaging, or attempting to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) (2024).

91.    Lan Bai is also permanently restrained, enjoined, and prohibited from directly or indirectly:

Consent Order -35
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2024)), for her own personal accounts or for any account in which she has a direct or indirect interest;

c. Having any commodity interests traded on her behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2024); and

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2024)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38)), registered, exempted from registration, or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2024).

## V.    STATUTORY AND EQUITABLE RELIEF

92.    Lan Bai shall pay restitution, plus post-judgment interest, to each defrauded customer who deposited funds into her bank account(s).

93.    Lan Bai shall pay disgorgement, plus post-judgment interest to the CFTC, for all ill-gotten gains received by her as a Facilitating Defendant and as the controlling person of Aipu.

Consent Order -36
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

94.     Lan Bai shall pay a civil monetary penalty, plus post-judgment interest, to the CFTC.

95.     The Court shall determine the amounts of restitution, disgorgement and civil monetary penalty and the procedures for payment and distribution of these monetary sanctions by further order upon:  motion of the parties submitting to the Court a proposed supplemental consent order setting out their agreement on the amounts of restitution, disgorgement and civil monetary penalty to be paid by Lan Bai in this matter; or by CFTC motion and, after notice and opportunity to be heard at a duly noticed hearing before this Court on such subsequent motion by the CFTC.  The CFTC does not oppose a hearing on any such motion filed by Lan Bai.  The parties have 120 days from the entry of this Consent Order to resolve these issues by the joint submission of a second proposed consent order.  If these issues remain unresolved after 120 days from the entry of this Consent Order, the CFTC shall file an appropriate motion no later than 14 days following the expiration of the 120-day period.

96.     In connection with any CFTC motion for restitution, disgorgement and/or civil monetary penalties, and at any hearing held on such motion:  (a) Lan Bai will be precluded from arguing that she did not violate the federal laws as alleged by the Complaint; (b) Lan Bai may not challenge the validity of her consents and agreements herein or this Consent Order; (c) solely for the purposes of such motion, the allegations of the Complaint and the Findings of Fact and

Consent Order -37
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

Conclusions of Law in this Consent Order shall be accepted as and deemed true by the Court

except as to any amounts subject to Court adjudication; and (d) the Court may determine the

issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition

or investigative testimony, witness testimony, and documentary evidence, without regard to the

standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil

Procedure.  In connection with the CFTC's motion for restitution, disgorgement and/or civil

monetary penalties, the parties may take discovery, including discovery from appropriate non-

parties.

   97. Lan Bai shall reasonably cooperate fully and expeditiously with the CFTC,

including the CFTC's Division of Enforcement, in this action.  As part of such cooperation, Lan

Bai shall reasonably comply, to the full extent of her abilities, promptly and truthfully with any

inquiries or requests for information including but not limited to, requests for production of

documents and authentication of documents, shall provide assistance at any trial, proceeding, or

investigation related to the subject matter of this action, including but not limited to, requests for

testimony, depositions, and/or interviews.  Reasonable costs associated with Lan Bai's

cooperation shall be reimbursed.

Consent Order -38
(3:24-cv-05815-BHS)

            Timothy J. Mulreany
            CFTC
            1155 21st St, NW
            Washington, DC 20581
            202-418-5306

## VI.   MISCELLANEOUS PROVISIONS

98.    Until such time as Lan Bai satisfies in full her Restitution, Disgorgement, and CMP obligations that may be imposed in this action, upon the commencement by or against Lan Bai of insolvency, receivership, or bankruptcy proceedings or any other proceedings for the settlement of Lan Bai' debts, all notices to creditors required to be furnished to the CFTC under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy, or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Office of the General Counsel
> Commodity Futures Trading Commission
> 1155 21st Street, N.W.
> Washington, DC 20581

99.    Notice:  All notices required to be given by any provision in this Consent Order, except as provided in Paragraph 98 above, shall be sent certified mail, return receipt requested, as follows:

> Notice to CFTC:
> Paul G. Hayeck
> Deputy Director
> Commodity Futures Trading Commission
> 1155 21st Street, N.W.
> Washington, DC 20581

> Notice to Lan Bai:

Consent Order -39
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

Lan Bai
5248 S. Columbia Place
Tulsa, OK 74105

All such notices to the CFTC shall reference the name and docket number of this action.

100.    Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

101.    Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

102.    Waiver:  The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

Consent Order -40
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

103.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to ensure compliance with this Consent Order and for any other purposes related to this action, including any motion by Lan Bai to modify or for relief from the terms of this Consent Order.

104.    Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Consent Order shall be binding upon Lan Bai, upon any person under her authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Lan Bai.

105.    Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent

Consent Order -41
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

106.    Contempt:  Lan Bai understands that the terms of this Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

107.    Agreements and Undertakings:  Lan Bai shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order for Permanent Injunction and Other Statutory and Equitable Relief Against Defendant Lan Bai.*

**DONE AND ORDERED** in Chamber at Tacoma, Washington on this 3rd day of February, 2025.

_____
BENJAMIN H. SETTLES
UNITED STATES DISTRICT JUDGE

Consent Order -42
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306

CONSENTED TO AND APPROVED BY:

_____
Defendant Lan Bai, individually

Date: 1-6-2025

_____
/s/ Timothy J. Mulreany

Timothy J. Mulreany, Chief Trial Attorney
Karen Kenmotsu, Trial Attorney
Paul G. Hayeck, Deputy Director
COMMODITY FUTURES TRADING
COMMISSION
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5306

Date: January 14, 2025

Consent Order -43
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20581
202-418-5306