1

2

3

4

5

6

7

8

9

10

11

12

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

COMMODITY FUTURES TRADING
COMMISSION,

           **Plaintiff,**

           **v.**

AIPU LIMITED,
FIDEFX INVESTMENTS LIMITED,
CHAO LI,
QIAN BAI, and
LAN BAI,

           **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Civil Action No.: 3:24-cv-5815-BHS**

**ORDER FOR DEFAULT JUDGMENT
AGAINST DEFENDANTS AIPU LTD.,
FIDEFX INVESTMENTS LTD., CHAO
LI AND QIAN BAI**

13

14

15

16

      Before the Court is Plaintiff Commodity Futures Trading Commission's ("Plaintiff" or
"CFTC" or "Commission") Motion for Default Judgment Against Defendants Aipu Limited
("Aipu"), Fidefx Investments Ltd. ("FIL"), Chao Li ("Li") and Qian Bai ("Bai") (collectively,
"Defaulted Defendants") pursuant to Fed. R. Civ. P. 55(b)(2) ("Motion").

17

18

19

20

21

      The Court having carefully reviewed the CFTC's Motion; the Memorandum in support of
the Motion; the Declarations filed in support of the Motion; the Complaint - the allegations of
which are well-pleaded and taken as true; the entire record in this case, and being otherwise fully
advised in the premises, and the CFTC having demonstrated that the factors set forth in *Eitel v.
McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) weigh in favor of default judgment, it is hereby:

22

23

24

25

      **ORDERED** that the CFTC's Motion for Default Judgment Against the Defaulted
Defendants is **GRANTED**.  Accordingly, the Court enters the following Findings of Fact and
Conclusions of Law relevant to the allegations in the Complaint, and issues the following Order

26

27

28

Order for Default Judgment -1
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

of Default Judgment Against Defendants Aipu, FIL, Li and Bai (hereinafter "Order") pursuant to Sections 6c and 6d of the Commodity Exchange Act ("Act"), 7 U.S.C. § 13a-1, as set forth herein.

## I.     PROCEDURAL HISTORY

On September 27, 2024, the CFTC filed a Complaint against the Defaulted Defendants and Defendant Lan Bai (Defaulted Defendants, together with Lan Bai, collectively referred to as "Defendants") alleging that the Defendants violated Sections 4b(a)(2)(A)-(C) and 6(c)(1), of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), and 9(1), and Commission Regulations ("Regulations") 5.2(b)(1), (3), and 180.1(a)(1)-(3), 17 C.F.R. §§ 5.2(b)(1), (3), 180.1(a)(1)-(3) (2024). Dkt. 1.

On February 3, 2025, the Court entered the Consent Order of Permanent Injunction and Other Statutory and Equitable Relief against  Defendant Lan Bai which reserves the entry of restitution, disgorgement, and civil monetary penalties against Lan Bai ("Consent Order").  Dkt. 20.  As a result of the entry of the Consent Order, Defendant Lan Bai is not included in this Order.

On October 25, 2024, the CFTC served the Defaulted Defendants under the methods set forth in the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") in keeping with Fed. R. Civ. P. 4(f)(1). Defaulted Defendants were served with copies of the Complaint, Summons, Civil Cover Sheet and Hague Service Convention Notice and Summary of the Document to be Served.  (Dkt. Nos. 12-15).

Despite being served, the Defaulted Defendants never appeared, answered or otherwise responded to the CFTC's Complaint.

Accordingly, on December 30, 2024, the CFTC sought a Clerk's entry of default against the Defaulted Defendants.  Dkt. 16.

Order for Default Judgment -2
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

On January 6, 2025, the Clerk entered default against the Defaulted Defendants.  Dkt. 17.

## II.    FINDINGS OF FACT

### A.  The Parties

Plaintiff **CFTC** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and Regulations.  The CFTC maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581.  Dkt. 1 at ¶ 17.

Defendant **Qian Bai** resides in the PRC.  Pursuant to the records of the United Kingdom's Companies House ("UKCH") registration, Bai incorporated Aipu on March 23, 2023, and was listed as the sole Director of Aipu.  Bai was listed as residing in the PRC, with a correspondence address in West Midlands, England, United Kingdom.  Bai was also the person who registered the Aipu website on or about March 17, 2023, through *Go Daddy.com*, a U.S.-based company, using a purported address in Kowloon, Hong Kong, a special administrative region of the PRC.  Bai is not registered in any capacity with the Financial Conduct Authority ("FCA"), which is the United Kingdom's regulator of financial firms and their employees who market and provide services to customers related to financial products.  Bai has never been registered with the CFTC in any capacity.

Defendant **Chao Li** resides in the PRC.  Pursuant to the records of the UKCH, Li incorporated FIL on November 3, 2023, and was listed as the sole Director of FIL.  Li was listed as residing in the PRC, with a correspondence address in West Midlands, England, United Kingdom that was the same address used by Bai.  Li is not registered in any capacity with the FCA.  Li has never been registered with the CFTC in any capacity.

Defendant **Aipu Limited** is a "private limited company" organized pursuant to the laws of the United Kingdom.  Pursuant to the records of the UKCH, Aipu was created on or about

Order for Default Judgment -3
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

March 23, 2023, and had a registered office address located in Manchester, England.  On October 29, 2024, Aipu's registration was stricken from the UKCH register and Aipu was dissolved.  Dkt. 1 at ¶ 20; Dkt. 23, Declaration of George Malas ("Malas Decl.") at ¶ 7d.  Aipu has never been registered with the FCA in any capacity.  Aipu has never been registered with the CFTC in any capacity.  *Id.*

Defendant **Fidefx Investments Limited** is a "private limited company" organized pursuant to the laws of the United Kingdom.  Pursuant to the records of the UKCH registration, FIL was created on or about November 3, 2023, and had a registered office address located in Coventry, West Midlands, England.  Although FIL is currently listed as an active company, on March 4, 2025, the UKCH Registrar of Companies gave notice that it had begun the process of striking FIL off the register.  FIL has never been registered with the FCA in any capacity.  FIL has never been registered with the CFTC in any capacity.  Dkt. 1 at ¶ 21; Malas Decl. at ¶ 7e.

Defendant **Lan Bai** resides in Tulsa, Oklahoma.  Lan Bai has never been registered with the CFTC in any capacity.  Dkt. 1 at ¶ 22.

**B.  Summary of the Fraudulent Scheme**

As alleged in the Complaint, and incorporated herein by reference, from at least February 6, 2023, to September 27, 2024 ("Relevant Period"), Defaulted Defendants, together with Lan Bai, while acting as a common enterprise, fraudulently solicited and misappropriated $4,621,056.67 from thirty-four (34) customers. Dkt. 1 at ¶¶ 1, 27-67; Malas Decl. at ¶¶ 2, 12.

The Defendants' investment scheme involved fraudulently soliciting and accepting assets - both fiat currency and digital assets - from customers in connection with the sale of agreements, contracts or transactions in commodities on a leveraged or margined basis, or financed by the offeror, counterparty or a person acting in concert with the offeror or counterparty on a similar basis ("leveraged or margined retail commodity transactions"), off-exchange retail foreign

Order for Default Judgment -4
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

currency ("forex") contracts, and commodity futures contracts, which together are included with the definition of "commodity interest" as defined by CFTC regulations.  17 C.F.R. § 1.3 (2024). Dkt. 1 at ¶ 1.

The majority of the customers were located in the United States, including one customer who resided in Pierce County, Washington during the Relevant Period.  Dkt. 1 at ¶ 1.  Most, if not all, of the customers, including the Pierce County customer, were not eligible contract participants ("ECPs") pursuant to Section 1a(18)(A)(xi) of the Act, 7 U.S.C. § 1a(18)(A)(xi).[1] Dkt. 1 at ¶¶ 1, 27-67.

The fraudulent common enterprise followed a similar pattern, with customers either directly funding a purported "trading account" with Aipu via the website *www.aipufx.com,* or with FIL via the website *www.fidefxltd.com* (collectively the "websites"), or agreeing to trade commodity interests via Aipu and/or FIL after being contacted by individuals acting on behalf of the Defendants ("Solicitors").  Dkt. 1 at ¶ 2.  The contents of the Aipu and FIL websites were essential identical, with each website being mirror images of each other . Dkt. 1 at ¶ 2, Malas Decl. at ¶ 11.  Aipu and FIL operated in essentially identical fashion, and all in furtherance of the Defendants' common enterprise.

Solicitors contacted customers via computer and cell phone applications such as WeChat, WhatsApp, and Line, and other social media platforms. Dkt. 1 at ¶ 3.

The Solicitors claimed to have knowledge or inside information that allowed them to earn 10% to 30% profits per trade trading in commodity interests such as leveraged or margined retail commodity transactions, retail forex, and/or commodity futures contracts. *Id*.

---

[1] An ECP is defined in 7 U.S.C. § 1a(18)(A)(xi), in relevant part, as "an individual who has amounts invested on a discretionary basis, the aggregate of which is in excess of – (I) $10,000,000; or (II) $5,000,000 and who enters into the agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."

Order for Default Judgment -5
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

The Solicitors offered to share their knowledge or inside information with customers and to help them trade by providing particularized trading advice. *Id*.

Once an account was funded, customers were provided access to online account statements that purported to show deposits into their trading accounts and profitable trading at Aipu or FIL. Dkt. 1 at ¶¶ 35, 37-38. These account statements were false. Dkt. 1 at ¶¶ 3-4, 44. Neither Aipu nor FIL had any trading accounts in the United States to which customer funds were sent. *Id*.  Upon information and belief, there were no trading accounts at Aipu or FIL to which customer assets were sent, and no trading took place on behalf of customers at either Aipu or FIL. *Id*.

Defendants did not have any commodity interest trading accounts, failed to use customer assets to margin, guarantee, or secure trades on behalf of defrauded customers, and misappropriated nearly all of the assets they accepted from customers by immediately transferring said assets to the People's Republic of China ("PRC") and elsewhere to entities with no connection to commodity trading ("Scheme Entities"). *Id*.

Throughout the Relevant Period, for the purpose of funding customers' purported commodity trading accounts, Defendants, working in concert with Solicitors as a common enterprise, directed customers to transfer their fiat and digital assets through a series of bank accounts and private digital wallets affiliated with the Defendants. Dkt. 1 at ¶ 5.

None of these accounts were held at, or controlled by, a CFTC-registered futures commission merchant ("FCM") or retail foreign currency dealer ("RFED"). Rather than using these assets to trade commodity interests on behalf of customers, Defendants immediately misappropriated customers' assets by transferring them offshore to non-trading accounts controlled by the Scheme Entities. *Id*.

Order for Default Judgment -6
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

1    Bai and Lan Bai, individually and as controlling persons of Aipu, knowingly or

2  recklessly omitted material facts from customers after accepting their assets for the purpose of

3  trading commodity interests, including but not limited to:  Defendants misappropriated customer

4  assets; Defendants did not trade commodity interests on behalf of customers after accepting

5  customers' assets; Defendants did not forward customers' assets to any entity that traded assets

6  on behalf of customers; customers had no trading accounts; and, the online account statements

7  Defendants provided to customers were false. Dkt. 1 at ¶ 6.

8    Li, individually and as the controlling person of FIL, knowingly or recklessly omitted

9  material facts from customers after accepting their assets for the purpose of trading commodity

10  interests, including but not limited to: Defendants misappropriated customer assets; Defendants

11  did not trade commodity interests on behalf of customers after accepting customers' assets;

12  Defendants did not forward customers' assets to any entity that traded assets on behalf of

13  customers; customers had no trading accounts; and, the online account statements Defendants

14  provided to customers were false. Dkt. 1 at ¶ 7.

15    Throughout the Relevant Period, Li knew or recklessly disregarded that the customer

16  assets she accepted via the FIL website and otherwise were intended for trading commodity

17  interests via FIL trading accounts, that the account statements issued to customers were false and

18  omitted material facts, and that she caused customer assets to be forwarded to Scheme Entities

19  that were not associated with commodity interest trading as intended by customers or promised

20  by Defendants. Dkt. 1 at ¶ 10.

21    Defaulted Defendants were joined in a common purpose of defrauding and profiting from

22  customers, had relationships with and among each other, depended upon the participation of each

23  other to accomplish their common purpose, utilized websites that were mirror images of one

24

25

26  Order for Default Judgment -7                    Timothy J. Mulreany
    (3:24-cv-05815-BHS)                              CFTC
27                                                   1155 21st St, NW
                                                     Washington, DC 20582
28                                                   202-418-5306

another, and were each employed by and/or associated with the Scheme Entities during the Relevant Period. Dkt. 1 at ¶ 11.

By this conduct, and the conduct further described herein, the Defaulted Defendants have engaged, are engaging, and/or are about to engage in acts and practices in violation of Sections 4b(a)(2)(A)-(C) and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 9(1), and Commission Regulations 5.2(b)(1) and (3) and 180.1(a)(1)-(3), 17 C.F.R. §§ 5.2(b)(1), (3), 180.1(a)(1)-(3) (2024).

## III.    CONCLUSIONS OF LAW

### A. <u>Jurisdiction and Venue</u>

This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c of the Act, 7 U.S.C. § 13a-1(a), authorizes the CFTC to seek injunctive relief against any person whenever it shall appear to the CFTC that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

Venue properly lies with this Court pursuant to Section 6c(e) of the A, 7 U.S.C. § 13a-1(e), and 28 U.S.C. § 1391(b) because Defendants reside, transact or transacted business in this District, at least one of the customers resides in this District, and certain of the transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur within this District. Venue also properly lies as to aliens Bai, Li, FIL, and Aipu pursuant to 28 U.S.C. § 1391(c)(3).

Order for Default Judgment -8
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

**B.  Default Judgment Against the Defaulted Defendants is Warranted**

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process.  *See Eitel*, 782 F.2d 1470 at 1471-72 (9th Cir. 1986).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  After the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, the Court takes as true the factual allegations in the non-defaulting party's complaint, except those related to the amount of damages.  Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Nonetheless, "[e]ntry of default does not entitle the non-defaulting party to a default judgment as a matter or right." *Warner Bros. Entm't Inc. v Caridi*, 346 F. Supp 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted).  The "general rule [is] that default judgments are ordinarily disfavored.  Cases should be decided upon their merits whenever reasonable possible."  *Eitel*, 782 F.2d at 1472 (citing *Peno v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  Whether to grant a default judgment lies within the district court's discretion.  *Id*.  The Court exercises its discretion under the so-called Eitel Factors:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel*, 782 F.2d at 1471-72.

Other than the goal of resolving cases on their merits, none of these considerations weigh against a default judgment in this case.

Order for Default Judgment -9
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

**C. The CFTC Has Satisfied the Necessary Procedural Requirements for Default Judgment**

All the procedural requirements of LCR 55(b) have been met. The Clerk of this Court entered defaults against each of the Defaulted Defendants on January 6, 2025. Dkt. 17. The Defaulted Defendants are neither infants, incompetent persons, nor are they subject to the Servicemembers Civil Relief Act.

**D. The Eitel Factors Strongly Favor Entry of Default Judgments Against the Defaulted Defendants**

As noted above, courts in the Ninth Circuit consider the seven Eitel factors in determining whether to enter default judgment. Other than the goal of resolving cases on their merits all of the Eitel factors support entry of default judgment in this case.

**1) Eitel Factor 1: Possibility of Prejudice**

This factor favors granting default judgment. The CFTC will be prejudiced if default judgment is not entered because it "will be deprived of the opportunity to obtain judicial resolution of its claim[s]." *Sky Billiards, Inc. v. Loong Star, Inc.*, No. EDCV 14-921 JGB (SPx), 2016 WL 6661175, at \*5 (C.D. Cal. Mar. 17, 2016); see also *Halsey v. Colonial Asset Mgmt.*, No. 5:13-cv-02025, 2014 WL 12601015, at \*4 (C.D. Cal. July 17, 2014) (concluding plaintiff lacked remedy in absence of default judgment where defendant failed to file responsive pleading). The CFTC has strong, congressionally mandated interests in enforcing the Act and Regulations and deterring future wrongdoing through penalties, among other monetary relief. The Defendants' refusal to appear and defend will deprive the CFTC of the opportunity to enforce its rules and obtain judgment on the merits. *See SEC v. Fortitude Grp.*, No. 16-50 Erie, 2017 WL 818604, at \*2 (W.D. Pa. Feb. 10, 2017) (granting SEC's motion for default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" if motion were denied). Thus, this factor supports a default judgment.

Order for Default Judgment -10
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2)    Eitel Factors 2 and 3: Merits of the Substantive Claims and Sufficiency of the Complaint

The second and third Eitel factors also weigh in favor of default judgment.  The second and third Eitel factors "require that plaintiffs' allegations 'state a claim on which the [plaintiff] may recover.'"  *Siwiec v. Shyun Sun*, No. CV 12-6410-CBM (MANx), 2013 WL 12130002, at *2 (C.D. Cal. Feb. 20, 2013) (quoting *Kloepping v. Fireman's Fund*, No. C 94-2684, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)).  In considering a motion for default judgment, the Court treats "factual allegations of the complaint, except those relating to the amount of damages. . . as true."  *See TeleVideo Systems*, 826 F. 2d 915 at 917-918.  As described below, the Complaint has adequately pled both of the asserted causes of action.

### a.    Defendants Committed Fraud in Connection with Leveraged and Margined Commodities Transactions, Forex and Commodity Futures in Violation of 7 U.S.C. § 6b(a)(2)(A)-(C) of the Act, and 17 C.F.R. § 5.2(b)(1)-(3) (2024) (Count One)

7 U.S.C. § 6b(a)(2)(A)-(C), makes it unlawful:

> [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, [ . . . ] that is made, or to be made, for or on behalf of, or with, any other person other than on or subject to the rules of a designated contract market— (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report of statement . . . [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

Pursuant to 7 U.S.C. § 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 6b applies to the forex transactions, agreements, or contracts offered by the Defaulted Defendants and described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. §2(c)(2)(C)(i), "as if" they were contracts of sale of a commodity for future delivery. Further, Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C.

Order for Default Judgment -11
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

§ 2(c)(2)(C)(ii)(I), also makes those forex agreements, contracts, or transactions "subject to" Section 6b of the Act.  Finally, Section 2(c)(2)(C)(vii) of the Act, 7 U.S.C. § 2(c)(2)(C)(vii), makes clear the CFTC has jurisdiction over an account that is offered for the purpose of trading forex described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. §2(c)(2)(C)(i).

The language of 17 C.F.R. § 5.2(b)(1) and (3) (2024), mirrors that of 7 U.S.C. § 6b(a)(2)(A)-(C), with the additional element that the conduct must involve the "use of the mails or by any means or instrumentality of interstate commerce."

Pursuant to Section 2(c)(2)(D)(iii) of the Act, 7 U.S.C. § 2(c)(2)(D)(iii), Section 4b of the Act, 7 U.S.C. § 6(b), also applies to the leveraged and margined commodities transactions offered by the Defaulted Defendants as if they were a contract of a sale of a commodity for future delivery.

###### i.    Fraud by Material Misrepresentations and Omissions

To establish liability for fraud based on misrepresentations and omissions under Section 7 U.S.C. § 6b(a)(2)(A)-(C) of the Act and 17 C.F.R. § 5.2(b)(1) and (3) (2024), the Commission must prove that: (1) a misrepresentation, false or misleading statement, or deceptive omission was made; (2) with scienter; and (3) the misrepresentation, false or misleading statement, or deceptive omission was material.  *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002); *see also In re Slusser*, CFTC No. 94-14, 1999 WL 507574, at *9 (July 19, 1999), aff'd and remanded on other grounds *sub nom., Slusser v. CFTC*, 210 F.3d 783, 785-86 (7th Cir. 2000) (holding that CFTC's findings regarding fraud were supported by substantial evidence).

The first and third elements are met here because Defaulted Defendants made material misrepresentations and omissions to Customers.  Whether a misrepresentation or omission has been made is determined objectively and holistically, through examination of the "overall message" and the "common understanding of the information conveyed." *R.J. Fitzgerald*, 310

Order for Default Judgment -12
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

F.3d at 1328. A statement or omission is material if "a reasonable investor would consider it important in deciding whether to make an investment." *Id.* at 1328-29. "Misrepresentations concerning profit and risk go to the heart of a customer's investment decision and are therefore material as a matter of law." *CFTC v. Noble Wealth Data Info. Servs., Inc.,* 90 F. Supp. 2d 676, 686 (D. Md. 2000) (citing *CFTC v. Commonwealth Fin. Grp.*, 874 F. Supp. 1345, 1353 (S.D. Fla. 1994)).

The Defaulted Defendants, acting in a common enterprise with the Scheme Entities, knowingly and/or recklessly provided false information to Customers in the form of false online account statements. The trading applications used by the Defaulted Defendants provided false trade information to Customers, including false trade reports, account balances, profits and losses.

Moreover, the Defaulted Defendants failed to disclose material facts to the Customers, including that: (i) their funds would not be used for trading; (ii) their funds would be misappropriated; and (iii) the applications used by Aipu and FIL were completely fraudulent, and the posted returns were fake. These omissions are sufficiently material for purposes of Defaulted Defendants' liability.

### ii. Fraud by Misappropriation

Misappropriation of customer funds in connection with forex, leveraged commodities transactions and commodity futures trading constitutes fraud in violation of 7 U.S.C. §6b(a)(2)(A) and (C) of the Act and 17 C.F.R. § 5.2(b)(1) and (3)(2024). *See CFTC v. Driver,* 877 F. Supp. 2d 968, 978 (C.D. Cal. 2012), *aff'd sub nom. CFTC v. Driver*, 585 F. App'x 366 (9th Cir. 2014) (finding that "[s]oliciting or obtaining funds from investors for trading, then failing to trade the funds while using them for personal and business expenses, is misappropriation" and granting summary judgment to CFTC on claims that commodity pool

Order for Default Judgment -13
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

operator's misappropriation of customer funds violated 7 U.S.C. § 6b and 6o of the Act); *CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1106 (C.D. Cal. 2003) ("Defendant's misappropriation of funds entrusted to him for trading purposes is 'willful and blatant fraudulent activity' that clearly violates Section 4b(a) [7 U.S.C. § 6b(a)] of the Act." (quoting *Noble Wealth*, 90 F. Supp. 2d at 687)); *CFTC v. Giddens*, No. 1:11-CV-2038-WSD, 2013 WL 12244536, at *9 (N.D. Ga. Jan. 31, 2013) ("a 'misappropriation' of investor funds must involve, at a minimum, the intentional taking or use of an investor's money in violation of the terms agreed to by the investor").

The Defaulted Defendants misappropriated $4,621,056.67 in customer funds in violation of 7 U.S.C. § 6b(a)(2)(A)-(C) of the Act  and 17 C.F.R. § 5.2(b)(1) and (3) (2024) by, among other things, failing to use customer funds for their intended purpose, namely trading.  Instead, the Defaulted Defendants diverted customer funds to offshore locations, including the PRC, and to entities with no connection to commodity trading.  (Malas Decl. at ¶ 12; 50-52).

### iii.    Scienter for Material Omissions and Misappropriation

The Defaulted Defendants acted with the requisite scienter to violate 7 U.S.C. § 6b(a)(2)(A)-(C) of the Act and 17 C.F.R. § 5.2(b)(1) and (3) (2024).  Scienter requires proof that a defendant committed the alleged wrongful acts intentionally or with reckless disregard for his or her duties under the Act.  *See CFTC v. Noble Metals Int'l*, 67 F.3d 766, 774 (9th Cir. 1995) (holding that scienter is established when defendants act intentionally or with "careless disregard"); *see also Lawrence v. CFTC*, 759 F.2d 767, 773 (9th Cir. 1985) (finding that the Commission only needed to show that a defendant's actions were "intentional as opposed to accidental"); *Beck v. Manufacturers Hanover Tr. Co.*, 820 F.2d 46, 50 (2d Cir. 1987), *abrogated by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989) (noting that "a common method for establishing a strong inference of scienter is to allege facts showing" motive and opportunity).

Order for Default Judgment -14
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

The Commission need not prove "an evil motive or intent to injure a customer." *Cange v. Stotler & Co.*, 826 F.2d 581, 589 (7th Cir. 1987).

The evidence here shows that the Defaulted Defendants acted knowingly or, at the very least, with reckless disregard for the truth of the fraudulent conduct, by accepting $5,037,642.92 in customer deposits that were intended for forex, leveraged commodities and commodity futures trading. Malas Decl. at ¶ 12. The Defaulted Defendants returned $416,586.25 in fiat currency and digital assets to customers. *Id*. The Defaulted Defendants used assets sent in by earlier-in-time customers to return the $416,586.25 to customers, in the nature of a "Ponzi" scheme. *Id*. Defaulted Defendants then misappropriated the remaining $4,621,056.67. *Id*.

The Defaulted Defendants accepted customer funds knowing they had no legitimate business relationship with the customers. During the Relevant Period, the Defaulted Defendants did not have any commodity interest trading accounts and failed to use customer assets to margin, guarantee, or secure trades on behalf of the customers. Scienter is established here based on Defendants Bai and Li knowingly or recklessly disregarding that the customer assets they accepted via the Aipu and FIL websites were intended for trading commodity interests, that the account statements issued to customers were false and omitted material facts, and that they caused customer assets to be forwarded to Scheme Entities that were not associated with commodity interest trading as intended by customers or promised by the Defaulted Defendants. *See*, *Driver*, 877 F. Supp. 2d at 978 (finding fraud with requisite scienter where defendant "had control over the bank accounts where [customer] funds were deposited and controlled the futures trading accounts").

Defendant Li and Bai's scienter can be imputed to Aipu and FIL. Courts have imputed scienter to a corporation based on the actions of certain corporate employees or agents. *See, e.g., Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1254 (11th Cir. 2008) ("Corporations, of course,

Order for Default Judgment -15
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

have no state of mind of their own.  Instead, the scienter of their agents must be imputed to them."); *In re Spear & Jackson Sec. Litig.,* 399 F. Supp. 2d 1350, 1358 (S.D. Fla. 2005) ("the inference of scienter can arise from an aggregation of particularized facts, even if each individual fact standing alone does not create a sufficiently strong inference").

Further, the Defaulted Defendants used means and instrumentalities of interstate commerce, including wire transfers, and electronic communications in connection with their conduct.  Thus, the additional element for Regulation 17 C.F.R. § 5.2(b)(1) and (3) (2024), liability is met as well.  Therefore, the Defaulted Defendants violated 7 U.S.C. § 6b(a)(2)(A)-(C) of the Act and 17 C.F.R. § 5.2(b)(1) and (3) (2024).

**b.    Defendants Committed Fraud by Deceptive Device or Contrivance in Violation 7 U.S.C. § 9(1), and 17 C.F.R. § 180.1(a)(1)-(3) (2022) (Count Two)**

7 U.S.C. § 9(1) of the Act makes it unlawful for any person, directly or indirectly, to:

[U]se or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate . . . .

17 C.F.R. § 180.1(a)(1)-(3), provides:

It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

(1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

(2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;

Order for Default Judgment -16
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

1
       (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

2
       Digital asset commodities such as Bitcoin are encompassed in the definition of a

3
"commodity" under 7 U.S.C. § 1a(9), and contracts for their sale are subject to the prohibitions

4
of 7 U.S.C. § 9(1) of the Act, and 17 C.F.R. § 180.1(a)(1)-(3) (2022). *See, CFTC v. McDonnell*,

5
287 F. Supp. 3d 213, 217 (E.D.N.Y. 2018), recons. denied, 321 F. Supp. 3d 366, 367-68

6
(E.D.N.Y. 2018) (finding that "[v]irtual currencies can be regulated by CFTC as a commodity . .

7
. . They fall well-within the common definition of 'commodity' as well as the [Act's] definition

8
of 'commodities' as 'all other goods and articles . . . in which contracts for future delivery are

9
presently or in the future dealt in.'"); *CFTC v. My Big Coin Pay*, 334 F. Supp. 3d 492, 498-99

10
(D. Mass. 2018) (in denying a motion to dismiss, the Court held that "both 6(c)(1) and

11
Regulation 180.1 explicitly prohibit fraud even in the absence of market manipulation"); In re

12
BFXNA Inc., 2016 WL 3137612, at *5 (consent order) ("Bitcoin and other virtual currencies are

13
encompassed in the definition [of "commodity" under 1a(9) of the Act] and properly defined as

14
commodities, and are therefore subject as a commodity to applicable provisions of the Act and

15
Regulations.")

16
       To prove a violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) (2022), the

17
Commission need only show that the Defaulted Defendants:  (1) engaged in prohibited conduct

18
(i.e., employed a fraudulent scheme, made material misrepresentations or materially misleading

19
omission, or misappropriated customer funds); (2) in connection with the sale of a commodity in

20
interstate commerce; and (3) with scienter. *See, e.g., CFTC v. McDonnell*, 332 F. Supp. 3d 641,

21
717 (E.D.N.Y. 2018); *see also, CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1325 (11th Cir.

22
2018); *CFTC v. Kraft Foods Grp.*, 153 F. Supp. 3d 996, 1007 (N.D. Ill. 2015) (specifying level

23
of scienter for pleading action under 17 C.F.R. § 180.1) (*citing Prohibition on the Employment,*

24
*or Attempted Employment, of Manipulative Devices and Prohibition on Price Manipulation*, 76

25

26
Order for Default Judgment -17
(3:24-cv-05815-BHS)

                                  Timothy J. Mulreany
27
                                    CFTC
                                    1155 21st St, NW
28
                                    Washington, DC 20582
                                    202-418-5306

Fed. Reg. 41,398, 41,400 (July 14, 2011)); *CFTC v. Hunter Wise Commodities, LLC,* 21 F. Supp. 3d 1317, 1347 (S.D. Fla. 2014).

        **i.**    **The Defaulted Defendants Engaged in a Prohibited Fraudulent Scheme**

The same conduct that violates 7 U.S.C. § 6b(a)(2)(A)-(C) of the Act also violates 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) (2024), and the same scienter analysis above regarding 7 U.S.C. § 6b(a)(2)(A)-(C) applies here as well.

Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) (2024) by conducting a scheme to defraud customers in connection with the sale of contracts for the trading of forex, leveraged commodities transactions and commodity futures trading, including deceiving customers by, among other things: (i) misappropriating customer funds; (ii) providing false trading account records to customers; and (iii) omitting to provide material information to customers. This type of conduct falls squarely within the Act and Regulations and has been recognized as a violation subject to an enforcement action. *See McDonnell*, 332 F. Supp. 3d at 723 (holding Section 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) were violated by misappropriating funds and fraudulent misrepresentations in connection with virtual currency transactions); *CFTC v. Leben,* No. 3:14-CV-866-TLW, 2016 WL 7354359, at *5 (D.S.C. Aug. 5, 2016) (finding that defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by misappropriating funds); *CFTC v. Glob. Precious Metals Trading Co*., No. 1:13-cv-21708, 2013 WL 5212237, at *5 (S.D. Fla. Sept. 12, 2013) (default judgment) (finding defendant violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by misappropriating funds and making misrepresentations and omissions)).[2]

---

[2] Courts have applied the antifraud provisions of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) (2024) to both forex and digital asset commodity transactions. *See, CFTC v. WorldWideMarkets, Ltd*., No. 2:21-cv-20715, 2022

Order for Default Judgment -18
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

The "in connection" with requirement of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) (2024) is satisfied where the contract of sale of a commodity in interstate commerce and the fraud are not independent events. *Cf. SEC v. Zandford*, 535 U.S. 813, 818-26 (2002) (finding, in the securities context, the "in connection with" requirement was satisfied where a broker sold customer securities for the purpose of transferring the proceeds to his own account); *SEC v. DiBella*, No. 3:04-CV-1342-EBB, 2005 WL 3215899, at *6 (D. Conn. Nov. 29, 2005) ("A fraudulent scheme that coincides with the sale of securities satisfies the 'in connection with' requirement of section 10(b) [of the Exchange Act] and Rule 10b-5." (*citing Zandford*, 535 U.S. at 825)). The "in connection with" requirement is construed broadly. *See, e.g., SEC v. Hasho*, 784 F. Supp. 1059, 1106 (S.D.N.Y. 1992); see also *Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation*, 76 Fed. Reg. 41,398, 41,405 (July 14, 2011) ("The Commission interprets the words 'in connection with' broadly, not technically or restrictively.").

In this case, the fraudulent conduct occurred, and the material misrepresentations and omissions were made, in connection with contracts of sale of a commodity in interstate commerce. Defaulted Defendants obtained $5,037,642.92 from Customers located in the U.S. for the purpose of entering into contracts for the trading of forex, leveraged commodities transactions and commodity futures trading.

### ii.     The Defaulted Defendants Acted with Scienter

The level of scienter required to plead a cause of action under 17 C.F.R. § 180.1(a) (2024) is reckless or intentional. *Kraft*, 153 F. Supp. 3d at 1007 (citing 76 Fed. Reg. at 41,404).

---

WL 3535993, at *13 (D. NJ Aug. 18, 2022); *CFTC v. Tinoco, et al.*, No. 2:21-cv-00237, 2022 WL 1670031, at *8 (W.D. TX March 25, 2022)(consent order); *CFTC v. Tallinex, Ltd.*, No. 2:17-cv-00483, 2018 WL 3350347, at *4-5 (D. Utah July 9, 2018)(default).

Order for Default Judgment -19
(3:24-cv-05815-BHS)

This standard is satisfied if a defendant "intended to defraud, manipulate, or deceive, or if [d]efendant's conduct represents an extreme departure from the standards of ordinary care." *R.J. Fitzgerald & Co.*, 310 F.3d at 1328.  It is also satisfied when a defendant's conduct "involves highly unreasonable omissions or misrepresentations that present a danger of misleading [customers] which is either known to the Defendant or so obvious that Defendant must have been aware of it." *Id.* (quotation omitted); *see also Kraft*, 153 F. Supp. 3d at 1015 (scienter requires facts showing that conduct was reckless or intentional and is satisfied by a showing of "an extreme departure from the standards of ordinary care").

The same evidence cited by the CFTC in its scienter analysis regarding 7 U.S.C. Section 6b(a) of the Act applies here.  The Defaulted Defendants acted willfully or, at the very least, with reckless disregard for the truth.  The Defaulted Defendants accepted customer funds knowing they were not trading forex or other commodities for customers, knowing they had no legitimate business relationship with customers, and knowing they were misappropriating funds they accepted from customers.  Accordingly, The Defaulted Defendants acted with the requisite scienter.

### iii.    Defendants Operated as a Common Enterprise

The Defaulted Defendants are jointly and severally liable for the Scheme Entities' alleged violations because the individuals and entities operated and functioned as a common enterprise. When entities and individuals operate as a common enterprise, each may be held liable for the unlawful acts and practices of other members of the enterprise.  *FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1240 (11th Cir. 2017) (recognizing that courts have justly imposed joint and several liability where a common enterprise exists); *see also FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 637 (6th Cir. 2014) (affirming finding a common enterprise and imposition of joint and several liability where each of the corporate and individual defendants made up a

Order for Default Judgment -20
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

1    "messy maze of interrelated business entities"); *CFTC v. Wall St. Underground, Inc.*, 281 F.

2    Supp. 2d 1260, 1271 (D. Kan. 2003), *modified sub nom. CFTC v. Wall St. Underground, Inc.*,

3    No. CIV.A. 03-2193-CM, 2004 WL 1900588 (D. Kan. June 24, 2004), and *aff'd and remanded*,

4    128 F. App'x 726 (10th Cir. 2005) (individual and others held to be part of a common enterprise

5    where each of them operate as a "single economic entity").

6          There is no universal test for a common enterprise, but the inquiry is fact-specific, and

7    courts often look at a number of factors to determine whether there was a common enterprise,

8    including whether the companies operated under common control, whether they shared office

9    space and/or officers, whether their business was transacted through interrelated companies,

10   whether they commingled corporate funds or failed to maintain separation of the companies,

11   whether they had unified advertising, and whether the evidence reveals that no real distinction

12   existed between the corporate defendants. *CFTC v. Trade Exch. Network Ltd*., 117 F. Supp. 3d

13   29, 38–39 (D.D.C. 2015) (setting forth the following common enterprise factors under

14   Commodity Exchange Act cases: "(1) maintain officers and employees in common, (2) operate

15   under common control, (3) share offices, (4) commingle funds, and (5) share advertising and

16   marketing," as well as whether "corporate formalities are observed and whether the companies

17   conduct business at arm's length") (internal quotations and citations omitted); see also *CFTC v.*

18   *Scharf*, No. 3:17-CV-774-J-32MCR, 2019 WL 3139980, at \*3 (M.D. Fla. Apr. 25, 2019)

19   (consent order) (finding common enterprise where "companies had common ownership and

20   management, commingled funds, utilized common resources, had a unified marketing strategy,

21   participated in a shared business scheme, and had a common source of revenue"); *CFTC v.*

22   *Hunter Wise Commodities, LLC*, 1 F. Supp. 3d 1311, 1325 (S.D. Fla. 2014) (imposing common

23   enterprise liability on leveraged precious metals dealers where entities "held themselves out as a

24

25

26   Order for Default Judgment -21                    Timothy J. Mulreany
     (3:24-cv-05815-BHS)                               CFTC

27                                                         1155 21st St, NW
                                                        Washington, DC 20582

28                                                      202-418-5306

single operation, did not have separate office space, shared revenue," and individual defendants were officers in the various entities).

Here, The Defaulted Defendants and the Scheme Entities acted as a single, integrated common enterprise. The entities shared common control, assets, customers, fraudulent solicitations, business schemes, and funneled customer assets through common financial accounts to common entities located offshore.

The Aipu and FIL websites contained nearly identical content and operated in identical fashion. Aipu and FIL customer funds were deposited into the same bank accounts and transferred to common financial offshore accounts.

The coordinated manner in which FIL and Aipu interacted with customers and the Scheme Entities indicates that there was a common control being exercised. For example, customer fiat assets were deposited into Lan Bai's multiple personal bank accounts and were reflected quickly in the customers' purported online trading account balances. Similarly, customer deposits into digital wallet addresses provided by the Defaulted Defendants were reflected quickly in the customers' purported online trading account balances.

The Defaulted Defendants also moved customers' digital assets among themselves, using common digital asset wallets to misappropriate customer assets. For example, Aipu and FIL customers were directed to forward digital assets to the same digital wallet addresses to secure purported commodity trading in customers' trading accounts.

### iv.    Principal-Agent Liability

Under 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2024), a principal is strictly liable for the violations of its officials, agents, or other persons acting for it within the scope of their employment or office. *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986) ("[W]e have no doubt that section 2(a)(1) imposes strict liability on the principal . . . provided, of course,

Order for Default Judgment -22
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

as the statute also states expressly, that the agent's misconduct was within the scope or (equivalently but more precisely) in furtherance of the agency."); *see also Dohmen-Ramirez v. CFTC*, 837 F.2d 847, 858 (9th Cir. 1988) (finding "[i]t is not necessary to show control to establish agency under the CEA"). The fraudulent conduct of Li and Bai occurred within the scope of their employment with FIL and Aipu. Therefore, FIL and Aipu are liable for Li and Bai's violations of the Act and Regulations pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2024).

### v.    Controlling Person Liability

7 U.S.C. § 13(b) provides that any person who, directly or indirectly, controls any person who has violated the Act, or the Regulations promulgated thereunder, may be held liable for such violations to the same extent as the controlled person. To establish liability as a controlling person pursuant to Section 13(b), plaintiff must show that the person possesses the requisite degree of control and either: (1) knowingly induced, directly or indirectly, the acts constituting the violation; or (2) failed to act in good faith. *CFTC v. Equity Fin. Grp. LLC*, 572 F.3d 150, 160-61 (3d Cir. 2009) (finding individual defendants liable as controlling persons for corporation's failure to register as commodity pool operator).

To establish the first element, a defendant must possess general control over the operation of the entity principally liable. *See, e.g., R.J. Fitzgerald*, 310 F.3d at 1334 (recognizing an individual who "exercised the ultimate choice-making power within the firm regarding its business decisions" as a controlling person). Evidence that a defendant is the sole principal, stockholder, member of the board of directors or the authorized signatory on the company's bank accounts indicates the power to control a company. *In re Spiegel*, CFTC No. 85-19, 1988 WL 232212, at *8 (Jan. 12, 1988). The Commission must also show that a defendant possessed specific control, which is "the power or ability to control the specific transaction or activity upon

Order for Default Judgment -23
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

which the primary violation was predicated." *Monieson v. CFTC,* 996 F.2d 852, 860 (7th Cir. 1993) (internal quotation marks and citation omitted).  The defendant does not need to participate in or benefit from the wrongdoing; the issue is whether the defendant has the power to address the illegal conduct.  *Id.*

In addition to control, the Commission must show the controlling person knowingly induced, directly or indirectly, the acts constituting the violation, or did not act in good faith.  To show knowing inducement, the Commission must show that a defendant had actual or constructive knowledge of the core activities that constituted the violation of the Act or the Regulations, and allowed the activities to continue.  *R.J. Fitzgerald,* 310 F.3d at 1334; *Spiegel,* 1988 WL 232212, at *7.  To show lack of good faith, the Commission must show that a defendant failed to maintain a "reasonably adequate system of internal supervision and control" or did not oversee the system "with any reasonable diligence."  *Monieson,* 996 F.2d at 860 (quoting *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992)).

Here, Li and Bai are liable as a controlling person.  Bai was the sole Director of Aipu, and therefore the person in day-to-day control of Aipu.  Bai was responsible for registering Aipu's website, and as the sole Director, was responsible for the content of the website, including the fraudulent solicitations to customers.  Among other misrepresentations and omissions of material facts, the Defaulted Defendants, through the Aipu and FIL websites, falsely claimed that Aipu and FIL were regulated brokers holding licenses from the Vanuatu Financial Control.   In fact, no such entity exists.  The actual regulator for Vanuatu is the Vanuatu Financial Services Commission and neither Aipu nor Fil have ever been registered with them.  (Malas Decl. ¶ 7a, 17).

Li was the sole Director of FIL, and therefore the person in day-to-day control of FIL.  Li had personal knowledge of FIL's operations, including its solicitations of customers via the FIL

Order for Default Judgment -24
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

website, the origin of funds and digital assets being accepted into FILs bank accounts and digital wallets, and was also responsible for the daily disposition of those assets.  In addition to the false claims of being registered in Vanuatu, the FIL website also posted what appears to be falsified regulatory certificates from the Australia Securities & Investment Commission.  (Malas Decl. ¶ 18).

Therefore, Li and Bai knowingly induced the violations because they had actual or constructive knowledge of the wrongdoing.  *See Spiegel*, 1988 WL 232212, at *7 ("[W]e reject the view that a controlling person must know that the acts at issue amount to a violation in order to be held to have 'knowingly' induced the acts constituting the violation. . . .  [I]f the controlling person knowingly induces acts that amount to a violation, he will not escape liability merely because he acted in good faith.").  Thus, Li and Bai are liable for FIL and Aipu's violations as controlling persons.

### 3)    Eitel Factor 4:  The Sum of Money at Stake in the Action

The fourth Eitel factor, "the amount of money at stake in relation to the seriousness of the defendant's conduct" weighs in favor of a default judgment.  *PepsiCo, Inc. v. Los Potros Dist. Ctr., LLC*, No. CV-07-2425, 2008 WL 942283, at *3 (D. Ariz. Apr. 7, 2008).  Defendants' fraudulent conduct constitute core violations of the Act and Regulations.  The relief Plaintiff seeks is reasonable, is authorized by the Act and Regulations, and is consistent with prior default judgment awards in similar CFTC actions.  *See e.g., CFTC v. Cunwen Zhu et al.,* No. SACV10–1876, 2014 WL 12603558, at *11 (C.D. Cal. Dec. 7, 2023) (entering default judgment for CFTC and ordering defendants to pay $1,352,843 in restitution and a civil monetary penalty of $4,000,000 which represented triple the monetary gain in a rounded amount); *CFTC v. Am. Bullion Exch. ABEX Corp.*, No. SACV10–1876, 2014 WL 12603558, at *11 (C.D. Cal. Sept. 16,

Order for Default Judgment -25
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

2014) (entering default judgment for CFTC and ordering defendants to pay a civil monetary penalty exceeding $14 million); *CFTC v. Safevest, LLC*, No. SACV08–00474, 2009 WL 2448116, at *4-5 (C.D. Cal. July 13, 2006) (after defendants' default, Court ordered $18.4 million in disgorgement and $2 million in civil monetary penalties); *cf. CFTC v. Schiera*, No. CV05 2660 CAS, 2006 WL 4586786, at *7, *9 (S.D. Cal. Dec. 11, 2006) (entering default judgment and ordering defendants to disgorge $3 million and pay a $9 million civil monetary penalty).

### 4) **Eitel Factor 5:  There is Minimal Possibility of Dispute Concerning Material Facts**

Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.  *See TeleVideo Systems*, 826 F.2d at 917-18.  Here, Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the Clerk of the Court entered default against the Defendants.  No dispute has been raised regarding the material facts in the complaint, and the likelihood that any genuine issue may exist is, at best, remote. See Sky Billiards, Inc., 2016 WL 6661175, at *5 (defendants' failure to respond "supports the conclusion that the possibility of a dispute as to the material facts is minimal").

### 5) **Eitel Factor 6:  There is No Evidence that Defendants Defaulted Due to Excusable Neglect**

Defendants' failure to respond to the Complaint is not the result of "excusable neglect." The CFTC has diligently prosecuted this case since its inception, while Defendants have failed to answer, plead or defend in this action.  As discussed above, Defendants were properly served with the Summons, the Complaint, the notice of entry of default, and all associated papers.

No facts suggest that Defendants' failure to plead or respond to the Complaint is due to excusable neglect.  Defendants have been properly served with all relevant documents and have

Order for Default Judgment -26
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

chosen not to participate in this litigation.  Therefore, this factor weighs in favor of default judgment.  *See Halsey* 2014 WL 12601015 at *2 ("Defendant was served with the summons and Complaint, but has failed to appear in this action.  Therefore, there is no indication that Defendant's default is due to excusable neglect, or that the material facts are in dispute.").

### 6)    Eitel Factor 7:  Policy Favoring Decision on the Merits Does Not Warrant Denying Default Judgment

Finally, the seventh Eitel factor—the general preference for deciding cases on the merits—does not counsel against a default judgment here because "[d]efendant[s'] failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (noting the on-the-merits "preference, standing alone, is not dispositive") (citation omitted).  In addition, countervailing interests outweigh any residual interest in preserving the remote potential for an on the merits decision.  "[T]he CFTC is the statutory guardian entrusted with the enforcement of the congressional scheme for safeguarding the public interest in commodity futures markets." *See Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251, 252 (9th Cir. 2004) (internal quotations and citations omitted).  Absent a default judgment and the concomitant penalties and injunctive relief, the CFTC will be unable to address and deter the misconduct at issue.  This weighs in favor of a default.

## IV.    REMEDIES AND DAMAGES

### A. <u>Permanent Injunction</u>

7 U.S.C. § 13a-1(a) authorizes the CFTC to seek, and the Court to impose, injunctive relief against any person whenever it shall appear to the CFTC that such person has engaged in any act or practice that violates the Act or Regulations.

Pursuant to 7 U.S.C. § 13a-1(a), "[t]he CFTC is entitled to a permanent injunction upon a showing that a violation [of the Act or Regulations] has occurred and is likely to continue unless

Order for Default Judgment -27
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

enjoined." *Driver*, 877 F. Supp. 2d at 981 (citations omitted).  As a result, "[o]nce a violation is demonstrated, the [CFTC] need show only that there is some reasonable likelihood of future violations." *CFTC v. Wilson*, No. 11CV1561, 2011 WL 6398933, at *2 (S.D. Cal. Dec. 20, 2011) (quoting *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)).

The Court may infer a likelihood of future violations of the Act and Regulations from past unlawful conduct.  *See Driver*, 877 F. Supp. 2d at 981 ("In drawing such an inference from past violations, 'the Court should look at the totality of the circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant.'") (quoting *Co Petro Mktg. Grp., Inc*., 502 F. Supp. at 818).  In deciding whether to issue a permanent injunction, the Court may also consider "the egregiousness of the defendant's actions, whether the violation was isolated or recurrent, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of his conduct's wrongfulness, and the likelihood that the defendant's occupation will present opportunities for future violations." *Driver*, 877 F. Supp. 2d at 981-82.

As described above, the well-pleaded facts of the Complaint and the evidence Plaintiff has placed before the Court through declarations establish that Defendants' unlawful conduct makes it highly likely that they will be repeat violators of the Act and Regulations unless permanently enjoined by this Court.

As alleged, Defendants fraudulently solicited and misappropriated $4,621,056.67 from thirty-four (34) customers, went to great lengths to conceal their fraud, and made "Ponzi" scheme-like payments to certain customers.

Based on the foregoing, the Court hereby Grants the Motion for Default Judgment and Orders as Follows:

Order for Default Judgment -28
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

(a)     The Court finds that Defaulted Defendants violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1), (3) (2024);

(b)     The Court finds that Defaulted Defendants violated 7 U.S.C. § 9(1), and 17 C.F.R. § 180.1(a)(1)-(3) (2024); and

(c)     There is a reasonable likelihood that the Defaulted Defendants will continue to violate the Act and Regulations unless permanently restrained and enjoined by this Court.  The intentional and egregious nature of Defaulted Defendants' fraudulent conduct warrants permanent injunctive relief, including registration and trading bans.

Accordingly, Defaulted Defendants and their agents, servants, employees, assigns, attorneys, holding companies, alter egos, and persons in active concert or participation with them, including any of their successors, are permanently restrained, enjoined, and prohibited from directly or indirectly:

(a)     Engaging in conduct that violates 7 U.S.C. §§ 6b(a)(2)(A)-(C), 9(1), and 17 C.F.R. §§ 5.2(b)(1), (3) and 180.1(a)(1)-(3) (2024);

(b)     Trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § 1a(40);

(c)     Entering into any transaction involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3(yy)) for their own personal account or for any account in which they have a direct or indirect interest;

(d)     Having any commodity interest traded on their behalf;

(e)     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

Order for Default Judgment -29
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

(f)     Controlling or directing trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(g)     Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring registration or exemption from registration with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9) (2024);

(h)     Acting as a principal as that term is defined in 17 C.F.R. § 3.1(a) (2024)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9) (2024); and

(i)     Engaging in any business activities related to commodity interests.

## V.     RESTITUTION AND CIVIL MONETARY PENALTY

### A.  **Restitution**

Defaulted Defendants shall pay, jointly and severally, restitution in the amount of $4,621,056.67 ("Restitution Obligation"). This amount will be offset by any amounts paid in restitution or disgorgement by Lan Bai arising from the conduct alleged in the Complaint. If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

The amounts payable to each customer shall not limit the ability of any customer from proving that a greater amount is owed from Defaulted Defendants or any other person or entity,

Order for Default Judgment -30
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

1  and nothing herein shall be construed in any way to limit or abridge the rights of any customer

2  that exist under state or common law.

3        Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defaulted

4  Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this

5  Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of

6  the restitution that has not been paid by Defaulted Defendants to ensure continued compliance

7  with any provision of this Order and to hold Defaulted Defendants in contempt for any violations

8  of any provision of this Order.

9      **B.  <u>Civil Monetary Penalty</u>**

10        Defaulted Defendants shall pay, jointly and severally, a civil monetary penalty in the

11  amount of $13,863,170 ("CMP Obligation").  This amount will be offset by any amounts paid in

12  restitution or disgorgement by Lan Bai arising from the conduct alleged in the Complaint. If the

13  CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP

14  Obligation beginning on the date of entry of this Order and shall be determined by using the

15  Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C.§ 1961.

16        Defaulted Defendants shall pay their CMP Obligation and any post-judgment interest, by

17  electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank

18  money order. If payment is to be made other than by electronic funds transfer, then the payment

19  shall be made payable to the Commodity Futures Trading Commission and sent to the address

20  below:

21      MMAC/ESC/AMK326

22      Commodity Futures Trading Commission 6500 S. MacArthur Blvd.

23      HQ Room 266

24      Oklahoma City, OK 73169 9-AMC-AR-CFTC@faa.gov

25

26  Order for Default Judgment -31                            Timothy J. Mulreany
    (3:24-cv-05815-BHS)                                        CFTC

27                                                                          1155 21st St, NW

28                                                                          Washington, DC 20582
                                                                         202-418-5306

If payment by electronic funds transfer is chosen, Defaulted Defendants shall contact the Federal Aviation Administration at the email address above to receive payment instructions and shall fully comply with those instructions. Defaulted Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defaulted Defendants and the name and docket number of this proceeding. Defaulted Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

## C. **Provisions Related to Monetary Sanctions**

Partial Satisfaction: Acceptance by the Commission of any partial payment of Defaulted Defendants' Restitution Obligation, or CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## D. **Miscellaneous Provisions**

Notice: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

**Notice to Defendants:**

**Aipu Limited**
c/o Registered Office
12 Blackett Street
Manchester
M12 6AE
United Kingdom

**Qian Bai**
12 Blackett Street
Manchester
M12 6AE
United Kingdom

**Fidefx Investments Limited**
15258493- Companies House Default
Address
P.O. Box 4385
Cardiff
CF13 8LH
United Kingdom

**Chao Li**
15258493- Companies House Default
Address
P.O. Box 4385
Cardiff
CF13 8LH
United Kingdom

Order for Default Judgment -32
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

**Lan Bai**
5248 S. Columbia Place
Tulsa, Oklahoma 74105

**Notice to Commission:**
**Paul G. Hayeck**
Deputy Director, Division of Enforcement
Commodity Futures Trading Commission
1155 21st St. NW
Washington D.C., 20581

Change of Address/Phone: Until such time as Defaulted Defendants satisfy in full their Restitution Obligation, and CMP Obligation as set forth in this Order, Defaulted Defendants shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten calendar days of the change.

Invalidation: If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defaulted Defendants to modify or for relief from the terms of this Order.

Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defaulted Defendants, upon any person under the authority or control of any of the Defaulted Defendants, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defaulted Defendants.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this Order for Default Judgment Against Defaulted Defendants Aipu, FIL, Li and Bai, forthwith and without further notice.

Order for Default Judgment -33
(3:24-cv-05815-BHS)

Timothy J. Mulreany
CFTC
1155 21st St, NW
Washington, DC 20582
202-418-5306

1    **IT IS SO ORDERED.**

2       Dated this 22nd day of May, 2025

3

4       _____

5       **THE HONORABLE BENJAMIN H. SETTLE**

6

7

8    Presented by: /s/ Timothy J. Mulreany

9    Timothy J. Mulreany
     Chief Trial Attorney
10   (Admitted Pursuant to LCR 83.1(c)(2))
     tmulreany@cftc.gov
11   **COMMODITY FUTURES TRADING COMMISSION**
     Three Lafayette Centre
12   1155 21st Street, N.W.
     Washington, D.C. 20581
13   Telephone:  (202) 418-5000

14

15

16

17

18

19

20

21

22

23

24

25

26   Order for Default Judgment -34                    Timothy J. Mulreany
     (3:24-cv-05815-BHS)                               CFTC
27                                                     1155 21st St, NW
                                                       Washington, DC 20582
28                                                     202-418-5306